UNITED STATES of America

v.

ONE 1967 FORD THUNDERBIRD, SERIAL NUMBER 7Y82Z108356.

Civ. A. No. 19180.

United States District Court, D. Maryland.

Feb. 17, 1970.

Stephen H. Sachs, U. S. Atty. for the District of Md., and Clarence E. Goetz, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

E. Stephen Derby, Baltimore, Md., for Lincoln Nat. Bank, John M. Elliott, Philadelphia, Pa., of counsel.

NORTHROP, District Judge.

The dispute in this case is over the proceeds of the sale of a Thunderbird seized by the United States pursuant to 49 U.S.C. secs. 781(a) (2) and 782, and 26 U.S.C. secs. 5851 and 5821, and 19 U.S.C. sec. 1610. The Lincoln National Bank (Lincoln) of Philadelphia, Pennsylvania, claims the fund by virtue of the default of its borrower, John Allen Watts.

The pertinent operative facts, as stipulated in the pre-trial order, are as follows: On November 12, 1966, Watts applied to Lincoln for a loan to purchase the Thunderbird which is the basis of this dispute. In his application Watts neglected to mention the fact that he had recently been released from a federal penitentiary in Pennsylvania and was at that time on parole. Instead, Watts stated in his application that his former address for the previous four years had been "1350 Seneca St., Buffallo, [sic] N. Y." and that his former employer had been his uncle. Although false, Lincoln relied on these representations, and made the loan to Watts for the Thunderbird.

On or about December 21, 1966, at the intersection of McClean Boulevard and Perring Parkway, this Thunderbird was seized, while under Watts' control, containing a HI-Standard, .12 gauge pump-action shotgun having a barrel length of 14$\frac{3}{16}$ inches. As a result, Watts was indicted, charged with possession of a firearm which had not been registered by anyone as required by 26 U.S.C.A. sec. 5841, in violation of 26 U.S.C.A. sec. 5851. This indictment was later dismissed, and no charges growing out of this incident have since been placed against him.

In spite of the dismissal of the charges as to Watts, the government maintains that it is entitled to the proceeds from the sale of this Thunderbird. The first complaint for condemnation of the Thunderbird for breach of the provisions of 49 U.S.C. §§ 781 and 782, jurisdiction by virtue of 19 U.S.C. sec. 1610, specifically charged possession of an unregistered firearm as required by 26 U.S.C. sec. 5841 in violation of 26 U.S.C. sec. 5851. The government then amended its complaint to specifically charge that Watts failed to comply with 26 U.S.C. § 5821, possession of a firearm upon which a "making" tax had not been paid. This amendment was specifically designed to circumvent the decision of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), which held that 26 U.S.C. § 5851 could not constitutionally be enforced against one who possessed a firearm which had not been registered as required by 26 U.S.C. § 5841. Lincoln twice sought administrative relief to no avail, and ultimately filed its claim in these proceedings.

■ Lincoln has advanced a number of reasons why the government's claim for forfeiture should be dismissed. Of those advanced, only one is of sufficient substance to justify granting relief. This is the applicability, on the facts of this case, of Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). Stated more precisely, would Watts' compliance with Title 26 U.S.C. § 5821, which requires a declaration of intent to make a firearm included in the definition of the Act, and to pay a $200.-00 tax thereon, result in his self-

incrimination; and further, if it would, would such self-incrimination bar condemnation of the Thunderbird as against Lincoln?

Whether compliance with the Act would result in self-incrimination depends on whether the law of Maryland or the law of Pennsylvania applies. It is not entirely clear whether this determination depends on where the firearm was made, as intimated in United States v. Thompson, 292 F.Supp. 757 (D.Del. 1968), at 765:

> If, however, there was a law in effect at the time the gun was made in the jurisdiction where the firearm was made which prohibited sawed-off shotguns, then the Fifth Amendment privilege should be available to the maker of the gun as an absolute defense to a § 5851 charge of possession of a firearm made in violation of § 5821 because compliance with the making provisions of § 5821 would have incriminated him under that State's laws even though a federal law would not have been violated by the making

or on the state of the maker's residence, as indicated by Judge Harvey in United States v. Wolfe, 303 F.Supp. 671 (D.Md. 1969). While in this case the Thunderbird in question containing the sawed-off shotgun was found in the possession of Watts, its registered owner, in Maryland, Watts was a resident of Pennsylvania and the automobile was registered in that state. All transactions relative to it took place in Pennsylvania.

Under the provision of the "making" section of the Act, 26 U.S.C. § 5821(b) (2), he was obliged to prepay the tax imposed, furnish a declaration of intent to make the firearm, and a certificate from a local law-enforcement agency that the firearm was intended for lawful purposes. Watts could not have done this without incriminating himself under Pennsylvania law which makes it a crime for a convicted felon like Watts to own or possess a firearm of this description. 18 Purdon's Pa.Stat.Ann. sec. 4628.[1] Under Maryland law, mere possession of a sawed-off shotgun is not a crime. Section 36 of Article 27 of the Annotated Code of Maryland states that only concealment of a deadly weapon is an offense. Section 445(c) of Article 27 makes it unlawful for a person convicted of a crime of violence to possess a pistol or revolver which is defined in 441(c) as a firearm with a barrel less than 12 inches in length. Here the firearm was 14³⁄₁₆ inches in length. So, possession in Maryland of this sawed-off shotgun alone would not have subjected Watts to be "immediately threatened by criminal prosecution." But, under Pennsylvania law, the converse is true—the possession of such a weapon by Watts in that state would subject him to criminal prosecution as soon as the saw was through the barrel.

Furthermore, under Pennsylvania law, Watts, a convicted felon, faced prosecution if he complied with 26 U.S.C. § 5821. See United States v. Stevens, 286 F.Supp. 532 (D.Minn.1968), United States v. Taylor, 286 F.Supp. 683 (E.D. Wis.1968), United States v. Thompson, 292 F.Supp. 757 (D.Del.1968). In reference to state statutes, see United States v. Wolfe, 303 F.Supp. 671 (D.Md. 1969). See also United States v. Miller, 406 F.2d 1100 (4th Cir. 1969), where the Fourth Circuit held that the Fifth Amendment would bar a prosecution for failure to obtain an order form required under sec. 5814(a) (possession of a firearm transferred in violation of the Act); and DePugh v. United States, 401 F.2d 346 (8th Cir. 1968), where a Missouri statute made it unlawful to possess the firearm in question.

---

1. 18 Purdon's Pa.Stat.Ann. sec. 4628 provides in pertinent part:
"(a) Firearm: * * * any shotgun with a barrel less than twenty four inches.
Crime of violence: * * * robbery * * *.

\* \* \* \* \*

(d) No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control."

In the original complaint the government predicated its case on 26 U.S.C. §§ 5841 and 5851 and charged that the vehicle was used in violation of 49 U.S.C. § 781(a)(2): vehicle used to conceal a contraband article, namely a 12-gauge pump-action shotgun having a barrel length of 14$\frac{3}{16}$ inches, unregistered. *Haynes, supra,* held that the Fifth Amendment privilege against self-incrimination was available as a defense to prosecution under 26 U.S.C. § 5841. Following *Haynes,* presumably to negate this defense, the government amended in this seizure proceeding. Watts' indictment under sec. 5841 was dismissed, and he was not reindicted under any other provision. It is difficult to hypothesize how an indictment brought under sec. 5821 against Watts could stand under these circumstances. If the government could not have proceeded against Watts in Maryland under that section, it is hardly fair for it to tiptoe around *Haynes* to deprive Lincoln of its rights to the automobile.

In view of the foregoing, it would be a most unfortunate rule of law which ignores Watts' ties to Pennsylvania and ascertains his ability to assert his Fifth Amendment rights according to the law of Maryland. Following Judge Harvey in *United States v. Wolfe,* I hold on the facts of this case that it is the law of Pennsylvania, the state of Watts' residency, rather than that of the state of his apprehension, which is determinative.

It is clear that the privilege against self-incrimination applies in forfeiture proceedings. United States v. 1967 Buick Electra 225, 289 F.Supp. 642 (D.N.J.1968); one 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Since Watts could not have been required to forfeit the Thunderbird to the extent of his interest, neither can it be forfeited as to Lincoln. Peisch v. Ware, 4 Cranch 347, 2 L.Ed. 643. In Boyd v. United States, 116 U.S. 616, 640, 6 S.Ct. 524, 536, 29 L.Ed. 746 (1886), the United States Supreme Court held:

[T]he owner of goods, sought to be forfeited by a proceeding *in rem,* * * is * * * the substantial party to the suit; * * *. [H]e is entitled to all the privileges which appertain to a person who is prosecuted for a forfeiture of his property by reason of committing a criminal offense.

The clerk will enter a judgment in favor of Lincoln National Bank in the amount of $2,642.84, the proceeds of the sale of the Thunderbird, with interest. The bond in the amount of $3,200.00 ordered to be posted on September 18, 1968, will be canceled. All court costs, cost of seizure and storage shall be paid by the United States.