951 A.2d 87

**Curtis C. STARR**

v.

**STATE of Maryland.**

**No. 76 Sept. Term, 2007.**

Court of Appeals of Maryland.

June 26, 2008.

Amy E. Brennan, Asst. Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for Petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of MD, Baltimore), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE and MURPHY, JJ., and ALAN M. WILNER and DALE R. CATHELL, JJ. (Retired, specially assigned).

MURPHY, Judge.

In the Circuit Court for Wicomico County, a jury convicted Curtis C. Starr, petitioner, of first degree assault and related offenses, including openly wearing and carrying a dangerous weapon with intent to injure. After the Court of Special Appeals affirmed those convictions in an unreported opinion, petitioner requested that this Court issue a writ of certiorari to review the sufficiency of the evidence that he violated Section 4–101(c) of the Criminal Law Article. His petition presented us with a single question:

> Is the evidence insufficient to sustain [petitioner's] conviction for wearing and carrying a dangerous weapon openly with intent to injure under Criminal Law Article, § 4–101 because a sawed-off shotgun does not meet the definition of a dangerous weapon for purpose of that statute?

The Court of Special Appeals concluded that (1) this argument was not preserved for appellate review, and (2) in the alternative, the evidence was sufficient to support petitioner's conviction. For the reasons that follow, we shall affirm the

judgment on the ground that the sufficiency of the evidence issue was not preserved for appellate review.

## Background

Petitioner was tried on a four count indictment that included the following charge:

### Count 4

THAT CURTIS C. STARR, on or about the 24th day of September, 2005, in Wicomico County, State of Maryland, did openly wear and carry a shotgun, a dangerous weapon, with the intent and purpose of causing injury to Kevin Lucas in an unlawful manner, contrary to the form of the Act of Assembly in such cases made and provided, against the peace, government and dignity of the State.

Art. CR Sec. 4.101.(c)(2)

The jurors were entitled to find beyond a reasonable doubt that about 11:30 p.m. on September 24, 2005, in the Salisbury Motor Home Park, petitioner fired a "sawed-off shotgun" over the head of one Kevin Lucas. Prior to jury selection, petitioner's trial counsel requested that the Circuit Court "consider asking the question about crimes involving firearms as there is an allegation that a firearm was involved in the commission of this crime." When asked whether the firearm in question was a handgun, petitioner's trial counsel responded, "No, sawed off shotgun is the allegation."

Mr. Lucas testified as follows on direct examination:

A. He passed by and he started, you know, giving us a real mean look, it was like three of us. I asked him what was going on. And he reached inside his pants and he pulled out, it looked like a sawed off shotgun. And at that time he put it back in his pants and kept going.

\* \* \*

A. ... And I had been in the house for a few minutes and I came outside and I heard someone call my name. And I looked and he was standing there with a shotgun pointing at me.

Q. When you say he, who are you referring to?

A. [ ] the Defendant. He was standing with a shotgun pointed at me . . .

* * *

Q. What kind of gun was it?

A. It was a sawed off shotgun, it was wrapped in white tape and it had a pistol grip.

Q. What part of it was wrapped in white tape?

A. The barrel.

Q. How long was the gun?

A. About that long, whatever that is, about 12, 14 inches.

Q. Where was he pointing the shotgun when he fired it?

A. In the air. He fired in the air.

Q. Is it possible for you to demonstrate the angle with your hands for the jury, the angle when he fired the gun?

A. Like that (indicating).

Q. Was he holding it with two hands?

A. Yes, one here and one there (indicating).

Q. How many times did he fire it?

A. One time. I think it was one shot because he loaded it up again.

Q. Did you see how he loaded it?

A. Yes, he flicked it down and pulled the one shell out and stuck the other shell in.

Q. Where did he take the additional shell from?

A. I guess in his pocket.

Q. Did you see what he did—was there an expended shell from inside the shotgun?

A. I think he put that inside his pocket, too, because it wasn't found.

The following transpired during Mr. Lucas' cross-examination:

Q. Do you have prior contact with shotguns what enables you to identify something as a shotgun?

A. No, I don't. But when he shot it two feet of fire came out of the end of it, that usually happens with a shotgun.

Q. So what you're indicating is when you saw the gun fire you saw something come out of the barrel?

A. Fire came out of the barrel.

Q. Fire came out of the barrel?

A. Right.

Q. Did you observe anything except for fire come out of the barrel?

A. Well, the trees and leaves and stuff moved, yes.

The State's witnesses included Daniel Wiltbank, who testified as follows on cross-examination:

Q. Do you have prior experience with firearms or shotguns that enables you to identify the object held by [the defendant] as a shotgun?

A. Do I have professional training or do I own firearms?

Q. Do you own firearms?

A. Yes, I do.

Q. Do you own shotguns?

A. Yes, I do.

Q. Can you describe the size of the firearm that you described as a shotgun that was held by [the defendant]?

A. Pretty much, yes, sir.

Q. Okay, what was its size?

A. It was probably anywhere from I'd say 28 to maybe 32 inches total length. I do believe it was a double barrel. Stock was cut off, the barrel was modified and cut off as well.

\* \* \*

Q. And could you describe the angle at which the gun was pointed when it was shot, when it was fired?

A. Pretty much up in the air.

Q. Okay. Did you see anything become expelled from the barrel when it was fired?

A. Yes, I did.

Q. What did you see that was expelled from the barrel?

A. I stated I saw a muzzle blast which looks like, in my experience before, looks like fire.

Q. Did you see the person who you've described as [the defendant] reload the gun?

A. No, sir.

Q. Why do you believe it was a double barreled shotgun?

A. Because I saw it and it looked to me like it was. But that I'm not 100 percent sure.

Q. But it looked to you like it had two barrels?

A. Yes, sir.

Petitioner testified that he was not at the scene of the crime. The firearm described by the State's witnesses was never recovered. At the conclusion of the State's case-in-chief, petitioner's trial counsel moved "for judgment of acquittal with respect to all counts," and presented the following argument in support of those motions:

Specifically with respect to the fourth count, the justification is that under the current State of Maryland case law it's not against the law to possess a shotgun or sawed off shotgun or at the very least Criminal Law Article Section 4–101(c)(2) doesn't prohibit it. The Court will notice in the annotations following the section of the case U.S. versus One 1967 Ford Thunderbird, 316 F.Supp., 391, it's a Federal District of Maryland case that was affirmed. **Simply put shotguns, even sawed off shotguns aren't dangerous weapons as contemplated by this particular statute.** There are prohibitions against, obviously, using a weapon against someone in a particular manner but that case as well as Anderson

versus State, 328 Maryland 426, 614 A.2d 963, a '92 case, the Anderson case stands for the proposition if it's not listed in the statute the State has to show that it was intended to be included and the federal U.S. versus One 1967 Ford Thunderbird case, taken in conjunction with the Anderson case points out the reason why count four at this point, the charge is openly wearing and carrying a shotgun is not an appropriate charge under the circumstances.

I would also note, for the record, that in order to be charged with and successfully convicted for wearing and carrying a shotgun the State has to show more than just plain use of it, but that it was worn around in some sort of general way. Specifically there's a court case where a person was accused of wearing and carrying a beer bottle for purposes of assaulting someone and what the Court of Special Appeals said is just because you carry around a beer bottle doesn't mean that you violate the requirement of Criminal Law Article Section 4–101(c)(2).

**That's the extent of argument with respect to count four.**

(Emphasis supplied). The record shows that the following transpired at this point:

THE COURT: The way I read the Thunderbird case, according to the annotations it says mere possession is not a crime, it didn't say it wasn't a dangerous weapon.

[DEFENSE COUNSEL]: That's why it's not a crime, Your Honor, because it's not a dangerous weapon under the Statute, that's the proposition to which the case stands.

THE COURT: Well, that's not what the annotation says.

[DEFENSE COUNSEL]: That's the proposition for which the case stands.

\* \* \*

[PROSECUTOR]: I thought the important factor there was whether it was being worn and carried as opposed to possessed. Just possessing isn't a crime, it has to be carried. In this case, you have the victim saying he saw him carrying it down the street in his waistband, lifted it up

and put it back down, then came back and fired the shot and then walked away with it again. That's carrying, not just possessing.

[DEFENSE COUNSEL]: If the State wants to rely upon that theory, it's a concealed weapon theory and so under my theory—what the victim says is that he sees him earlier with it tucked in his pants, which is not openly wearing and carrying anything but is in fact carrying it concealed which is an entirely different crime.

\* \* \*

THE COURT: Well I'm not convinced a sawed off shotgun is not a dangerous weapon. I don't think the case you cited stands for that proposition. There is evidence from which the jury could infer that the Defendant was carrying a sawed off shotgun, certainly he pulled it out of his pants and held it. And they can infer that he was carrying it openly with the intent or purpose of injuring someone else based upon the comments that he made. So I deny the motion as to count four.

At the close of all the evidence, although he renewed the motion for judgments of acquittal, petitioner's trial counsel did not (1) state any additional reasons why the motion should be granted, or (2) request a jury instruction that petitioner could not be convicted of the offense charged in Count 4 unless the jurors were persuaded beyond a reasonable doubt that the "sawed-off shotgun" fired by petitioner was *not* a handgun.

As stated above, petitioner was convicted of all counts. He noted an appeal to the Court of Special Appeals, and filed an Appellant's Brief that included the following argument:

Defense counsel moved for judgment of acquittal arguing that a sawed-off shotgun did not meet the definition of a dangerous weapon under Md. Ann.Code (2002, 2006 Supp.), Crim. Law Art. § 4–101.

\* \* \*

[Petitioner] was improperly convicted of openly wearing and carrying a dangerous weapon with intent to injure, because Criminal Law Article, § 4–101(a)(5)(ii) 1. provides

that a "weapon," for purposes of this statute, does not include a handgun.

In support of its conclusion "that the reason advanced by [petitioner] in this appeal for the alleged insufficiency of the evidence for a conviction was never argued with particularity in the motion for judgment of acquittal in the trial court[,]" the Court of Special Appeals stated:

> Although not entirely clear, defense counsel apparently argued that mere possession of a "sawed-off shotgun" did not violate CR § 4–101(c)(2) and that the shotgun was not a dangerous weapon because "if it's not listed in the statute the State has to show that it was intended to be included. . . ." At no time did defense counsel assert that the shotgun qualified as a handgun and thus was not covered by CR § 4–101(c)(2). Indeed, as previously stated, defense counsel expressly conceded during voir dire that the shotgun at issue was *not* a handgun.

Petitioner now argues to this Court that his "sufficiency" argument has been preserved for our review.

### Discussion

■ Petitioner argues that his "wearing and carrying" conviction must be reversed on the ground that there was a fatal variance between (1) the *allegata,* possession of a shotgun under circumstances that violated CL § 4–101(c)(2), which prohibits a person from carrying certain dangerous weapons— including a shotgun—openly with the intent or purpose of injuring an individual in an unlawful manner, and (2) the *probata,* possession of a "handgun," which is not proscribed by CL § 4–101 because the definition of a weapon in this section expressly excludes "a handgun." CL § 4–101(a)(5)(ii).[1] Because petitioner's trial counsel never argued to the circuit court that the "sawed-off shotgun" described by the State's witnesses was actually a "handgun" as that term is defined in

---

1. According to petitioner, he should have been charged with CL § 4–203(a)(1)(i), which prohibits a person from wearing, carrying or transporting a handgun, whether concealed or open, on or about the person.

CL § 4–201,[2] this argument has not been preserved for our review.

 It is well settled that "appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal." *Lotharp v. State*, 231 Md. 239, 240, 189 A.2d 652, 653 (1963). A criminal defendant who moves for judgment of acquittal is required by Md. Rule 4–324(a) to "state with particularity all reasons why the motion should be granted[,]" and is not entitled to appellate review of reasons stated for the first time on appeal. *State v. Lyles*, 308 Md. 129, 135–36, 517 A.2d 761, 764–65 (1986); *Muir v. State*, 308 Md. 208, 218–19, 517 A.2d 1105, 1110 (1986); *Graham v. State*, 325 Md. 398, 416–17, 601 A.2d 131, 140 (1992). In *Graham*, the petitioner, who had been convicted of theft of property worth $300 or more, argued that this conviction should be reversed on the ground "that the State failed to establish that [the stolen] items were worth $300 or more." *Id.* at 416, 601 A.2d at 140. This Court, however, refused to consider that argument because the record showed that the petitioner's trial counsel moved for a judgment of acquittal solely on the ground that the State had failed to prove that the

---

2. § 4–201 of the Criminal Law Article, in pertinent part, provides:

(c)(1) "Handgun" means a pistol, revolver, or other firearm capable of being concealed on the person.

(2) "Handgun" includes a short-barreled shotgun and a short-barreled rifle.

(2) "Handgun" does not include a shotgun, rifle, or antique firearm.
* * *
(g) "Short-barreled shotgun" means:

(1) a shotgun that has one or more barrels less than 18 inches long; or

(2) a weapon that has an overall length of less than 26 inches long and was made from a shotgun, whether by alteration, modification, or otherwise.

(h) "Shotgun" means a weapon that is:

(1) designed or redesigned, made or remade, and intended to be fired from the shoulder; and

(2) designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore one or more projectiles for each pull of the trigger.

owner of the stolen items was "a corporation, licensed to practice in the State of Maryland." *Id.* at 417, 601 A.2d at 140.

"Sufficiency" arguments that were not presented to the trial judge are often presented to the Court of Special Appeals, and are rejected by that court under the authority of *Lyles, Muir* and *Graham.* For example, in *McIntyre v. State,* 168 Md. App. 504, 897 A.2d 296 (2006), while affirming possession and distribution of child pornography convictions, the Court of Special Appeals refused to decide whether "the evidence produced at trial was insufficient to establish that the images depicted actual children, as opposed to virtual images of children[,]" because that argument was not made in the Circuit Court when the appellant's trial counsel moved for a judgment of acquittal. *Id.* at 526–27, 897 A.2d at 308–09. The *McIntyre* Court stated:

> In *Fraidin v. State,* 85 Md.App. 231, 244–45, 583 A.2d 1065 (1991), Judge Moylan, speaking for [the Court of Special Appeals], said:
>
>> In a jury trial, the only way to raise and to preserve for appellate review the issue of the legal sufficiency of the evidence is to move for a judgment of acquittal on that ground. Under Md. Rule 4–324(a), a defendant is further required to argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient. In *State v. Lyles,* 308 Md. 129, 135 [517 A.2d 761] . . . (1986), the Court of Appeals held clearly that a defendant is "required to state with particularity all reasons why his motion for judgment of acquittal should be granted." . . .
>
> More recently in *Bates v. State,* 127 Md.App. 678, 691, 736 A.2d 407 (1999), we said: "A defendant may not argue in the trial court that the evidence was insufficient for one reason, then urge a different reason for the insufficiency on appeal. . . ."

*Id.* at 527–28, 897 A.2d at 309.

■ According to petitioner, his present argument was preserved for appellate review when his trial counsel stated,

"shotguns, even sawed off shotguns aren't dangerous weapons as contemplated by this particular statute," and "if it's not listed in the statute the State has to show that it was intended to be included." While an appellant/petitioner is entitled to present the appellate court with "a more detailed version of the [argument] advanced at trial[, this Court has refused] to require trial courts to imagine all reasonable offshoots of the argument actually presented to them before making a ruling on admissibility." *Sifrit v. State*, 383 Md. 116, 136, 857 A.2d 88, 99–100 (2004). In *Sifrit*, we declined "to place such a substantial burden on the trial court[,]" when the trial court was ruling on the admissibility of an item of evidence. *Id.* at 136, 857 A.2d at 100. What we said in that case is fully applicable to appellate review of the denial of a motion for judgment of acquittal. When ruling on a motion for judgment of acquittal, the trial court is not required to imagine all reasonable offshoots of the argument actually presented.

Moreover, even if there were such a requirement, the argument petitioner presents to this Court is not a reasonable offshoot of the argument presented to the Circuit Court, during which petitioner's trial counsel called the Circuit Court's attention to two cases: *United States v. One 1967 Ford Thunderbird*, 316 F.Supp. 391 (D.Md.1970), and *Anderson v. State*, 328 Md. 426, 614 A.2d 963 (1992). *Ford Thunderbird* was cited in support of the argument that "mere possession of a sawed-off shotgun is not a crime." 316 F.Supp. at 393. *Anderson* was cited in support of the argument that § 4–101 of the Criminal Law Article did not apply to any weapon that was not "listed" in that statute. Both of these arguments are based on the proposition that petitioner was in possession of a "sawed-off *shotgun*" rather than a "handgun" on the occasion at issue. No "reasonable offshoot" of either of those propositions includes the argument that the petitioner was entitled to a judgment of acquittal on the ground that, although the State's evidence was sufficient to support a conviction for a violation of § 4–203(a)(1)(i) of the Criminal Law Article, petitioner had been erroneously

charged with a violation of § 4–101(c)(2) of the Criminal Law Article.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONER TO PAY THE COSTS.**