24 A.3d 667

**Andre Devon ARTHUR**

v.

**STATE of Maryland.**

**No. 90, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 13, 2011.

514

Marc A. DeSimone, Jr., Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner/Cross–Respondent.

Edward J. Kelley, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

Fireworks were not the only things erupting on one Fourth of July evening in 2007. An airborne newspaper sparked an altercation between the defendant, Andre Arthur, and Corpo-

ral Eric Stanley, resulting in criminal charges against Arthur for failure to obey a lawful order and resisting arrest. At trial, Arthur presented evidence that Corporal Stanley did not have probable cause to arrest him, and thus Arthur had a right to resist. Yet, the trial court refused to instruct the jury on the right to resist an unlawful arrest. A jury convicted Arthur on both counts. On appeal, Arthur attacked the trial court's refusal to issue his instruction, as well as the sufficiency of the evidence supporting his failure to obey a lawful order conviction.

The Court of Special Appeals affirmed the convictions, holding that the evidence was sufficient and that, although Arthur had generated the requested jury instruction, it was adequately covered by other instructions given. Thus, the trial court did not err in refusing Arthur's instruction. Arthur then petitioned this Court, presenting the following issues for our review:

1. Is the evidence sufficient to sustain Mr. Arthur's convictions for failure to obey a lawful order and resisting arrest where the record only shows that he used foul language after being told by a police officer to "lower his voice[,] . . . settle down"?

2. Did the trial court err in failing to instruct the jury, upon request, that a person is privileged to resist an unlawful warrantless arrest?

In response, the State filed its own petition, seeking answers to the following questions:

1. Did Arthur fail to preserve his challenge to the sufficiency of the evidence underlying his convictions?

2. Did the trial court correctly conclude that an instruction on the right to resist an unlawful arrest was not generated by the evidence?

We granted both petitions, and for the reasons stated below, we shall reverse the holding of our intermediate appellate court.

## FACTS AND LEGAL PROCEEDINGS

A few minutes before midnight on Independence Day 2007, Corporal Eric Stanley of the Frederick Police Department was driving his police vehicle northbound on Market Street when he observed a group of three people, including Arthur, walking together on the sidewalk. According to Stanley, he noticed Arthur "reach[ ] down and pick[ ] up a newspaper that had been left on the sidewalk[.]" As Stanley continued past the group, he "heard the thump of an item hitting [his] patrol vehicle[,]" and when he looked back, he realized that Arthur no longer had the newspaper in his hand. Stanley then stopped and exited his vehicle, saying to Arthur, "[H]ey, let me talk to you." [1]

Stanley later testified that, when he approached Arthur, the latter began yelling obscenities at him, specifically saying, "you get the fuck away from me, leave me the fuck alone[,]" and other words to that effect. Stanley responded by saying "hey, settle down. I need to talk to you[.]" Yet Arthur "continued with his verbal ... onslaught[,]" attracting the attention of people standing outside of a restaurant farther up the block.[2] Stanley told him "to lower his voice, to settle down, and he continued to refuse." It was at this point that Stanley told Arthur that he was under arrest, placing his hand on Arthur's shirt. Arthur reacted by "try[ing] to pull from [Stanley] in a yanking, jerking motion[,]" and Stanley "called for another police officer to back [him] up to affect the arrest." Arthur continued to struggle as three officers attempted to arrest him, leading them to "take him to the ground ... to prevent his fleeing[.]" Once on the ground, Arthur continued "kicking and pulling[,]" causing Stanley to sprain his ankle. Eventually, the officers were able to take Arthur into custody.

---

**1.** Although Stanley never told Arthur that he was "being detained for ... disorderly conduct of throwing an object at a vehicle[,]" he thought that approaching Arthur while in uniform and asking to speak to him was the "same thing."

**2.** Stanley did acknowledge, however, that "it's not uncommon for people to suddenly turn and look at the police."

At trial, Arthur and his companions offered a different version of the night's events. Danielle Brigham, Arthur's girlfriend, testified that, while walking with Arthur down Market Street, she stopped to talk to a friend. When she turned around, "there was a cop that was approaching [Arthur] and he had asked him to put his hands behind his back and [Arthur] asked ... why am I getting arrested?" But the officer "just told him to put his hands behind his back." When Arthur did so, the officer "put him on the ground and had put him eventually in the back of the car." Danielle contradicted Stanley's account, saying that there hadn't been any struggle. Arthur's brother, DaSean, also testified that he was walking ahead of Arthur and turned around to see "the officer approaching him and [Arthur] asked ... why am I getting locked up[?]" "[A]t that moment that's when [the officer] grabbed him and just threw him to the ground for no reason[.]"

When Arthur took the stand, he explained that on the night of his arrest, he, his girlfriend, and his brother were returning from the park where they had viewed the Fourth of July fireworks. Arthur said that Stanley approached him, telling him to place his hands behind his back. Arthur then asked the officer if he was under arrest, and "[h]e said no." So Arthur "continued to walk[,]" believing that he "didn't really have to continue to talk to him" because he was not under arrest. Stanley then "took [Arthur] by the shirt [and] slammed [him] up against the wall[.]" Arthur maintained that as he was talking to Stanley, he wasn't "using profanity. I'm not cursing. [I] just sa[id] that you don't have to be so aggressive and [I] plac[ed] one of my hands behind my back." He also claimed that he sustained some injuries from the encounter with the police officers, receiving a cut on his hand because one of the officers smashed the handcuffs onto his finger instead of his wrist. Other injuries included:

a knee injury. [One of the officers] placed his knee into my neck. I had to get a head scan at the hospital for a, um, I believe it was a pinched nerve in my neck. I had shoulder injuries. I had about four or five cuts on my body from

them just, you know, hitting me. One guy hit [me] with the baton like at least I would say four times, four or five times he hit me with the baton, and I was on my backside. While I was laying on my stomach.

Arthur did admit, however, that, before Stanley approached him, he had picked up the newspaper, and was tossing it across the street to one of his buddies who lived on that side of the street. He explained that he was not throwing the paper at any vehicles, but was simply "playing catch." He also admitted that he had been "drinking a little bit[.]"

At the close of the State's case, Arthur's counsel unsuccessfully moved for a judgment of acquittal, arguing that he had a right to resist the arrest:

Apparently the officer says that he was under arrest ... concurrently with him grabbing him and saying you're under arrest. Based on that, Your Honor, he was never told why he was under arrest, what he had done. I'm also having problems that it kind of conflicts with what was in the report. But just based on the testimony you're under arrest, I mean I think he had a right to resist.

Arthur then renewed his motion at the close of all evidence, arguing that the "State had failed to show that [Arthur] was a, failure to regard ... he failed to obey a lawful order and the fact that he wasn't disregarding a lawful order there was no right to arrest[.]" The court denied the motion for the second time.

As the trial was drawing to a close, the court notified both parties that it would instruct the jury according to the Maryland Criminal Pattern Jury Instruction for resisting a warrantless arrest.[3] Defense counsel asked the court to also

---

**3.** *Maryland Criminal Pattern Jury Instructions* 4:27.1 provides as follows:

Resisting Arrest (Warrantless)

The defendant is charged with the crime of resisting arrest. In order to convict the defendant of resisting arrest, the State must prove:

(1) that a law enforcement officer attempted to arrest the defendant;

instruct the jury that a person has the right to resist an unlawful arrest,[4] but the court was not receptive to this request:

> [DEFENSE COUNSEL]: If you determine the Defendant was not lawfully arrested and no arrest warrant was used then the Defendant had the right to resist arrest and that's pursuant to case law. Resisting unlawful arrest is not a crime in Maryland. If an arrest is illegal the arrestee may use any reasonable means to, even force to affect his escape. And that's, that's Maryland case law.

> THE COURT: The problem that you get into in this case is there's, I don't really want to have a sub-litigation issue about whether his arrest, because there, there could be four or five different things that he could have been arrested for according to the police officers. According to him, nothing. I'm gonna give the Pattern and no embellishment to [ ] it in this particular case.

---

(2) that the defendant knew that a law enforcement officer was attempting to arrest [him] [her];

(3) that the officer had reasonable grounds to believe that the defendant [was committing] [had committed] (crime); and

(4) that the defendant refused to submit to the arrest and resisted the arrest by force.

4. As part of his written request for a modified resisting arrest jury instruction, Arthur asked that the following be added to the pattern jury instruction:

A police officer may lawfully arrest without a warrant any person for any crime which the arrestee commits or attempts to commit in the officer's presence or within his view, or which the officer has probabl[e] cause to believe is being committed in his presence or within his view and may reasonably believe that arrestee is committing.

You must determine from the facts and circumstances in this case whether the defendant was lawfully arrested. If you find that the defendant was lawfully arrested, you must then proceed to determine whether he refused to submit to that arrest, whether that resistance was to an officer of the law in the performance of his legal duties, and whether the officer had identified himself as such.

Resisting an unlawful arrest is not a crime in Maryland. If an arrest is illegal, the arrestee may use any reasonable means even force, to effect his escape. If you determine that the defendant was not lawfully arrested and no arrest warrant was used, then the defendant had a right to resist that arrest.

[DEFENSE COUNSEL]: Your Honor, I'm, I'm not asking for embellishment. I would object to just a Pattern. I'm just stating that under Maryland law it is [not] illegal to resist an illegal arrest. If the jury concludes that of any of the four theories that he was legally arrested then he has no defense. But if the jury concludes that there wasn't no—a, a legal arrest, under Maryland law he has the right to resist and we have generated that instruction. I would just simply ask that that instruction be added.

THE COURT: How do you believe that you, you have generated that instruction? From the Defendant's initial, own testimony, best case he was littering. Second, he was acting, I, I mean, looking at it objectively the Defendant's own conduct constituted a particular offense.

The court rejected counsel's request because the modification was not in the pattern instruction,[5] and because it believed the defendant had not generated the instruction. The court explained that it would "instruct the jury that they do have to find that there were reasonable grounds to believe that the Defendant had committed a crime for him to be guilty of that offense [but] that's as far as [it would] go." Thus, the court's instruction mirrored the pattern.

The jury convicted Arthur of failing to obey a lawful order and resisting arrest and he was sentenced to a term of 60 days incarceration for failure to obey a lawful order and a concurrent term of one year incarceration for resisting arrest. Arthur timely appealed to the Court of Special Appeals, which affirmed his convictions. In a reported opinion, the Court agreed with Arthur that the issue was generated, but held that the trial court did not err in using the pattern jury instruction because the "reasonable grounds" language adequately conveyed that the arrest must be lawful. *Arthur v. State*, 193 Md.App. 446, 459, 997 A.2d 899, 907 (2010). The Court also held that there was sufficient evidence to support Arthur's convictions in the form of Stanley's testimony that he

5. The Court did acknowledge, however, that the modification was included in the *comments* to the pattern instruction.

arrested Arthur "because of the volume of [Arthur's] verbalizations and not their content[.]" *Id.* at 463, 997 A.2d at 909.

## DISCUSSION

### I. Sufficiency Of The Evidence

■ Arthur first challenges the conclusion of the Court of Special Appeals that there was sufficient evidence to support his convictions. Arthur contends that his convictions were improper because: "(1) [ ] Stanley's order for [ ] Arthur 'to lower his voice, to settle down' was an unlawful regulation of [ ] Arthur's right to free expression; and (2) [ ] Arthur was privileged to resist his unlawful arrest, and the acts of resistance were reasonable in scope to the officer's unlawful arrest." The State contests this assertion, arguing that Stanley's order was content-neutral, intended only to warn Arthur to lower his voice. In any event, asserts the State, this Court need not reach the issue because Arthur's challenge is not preserved for appellate review because, in his Motions for Judgment of Acquittal, Arthur did not challenge the lawfulness of Stanley's order on First Amendment grounds.

■ "It is well settled that appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal." *State v. Rich,* 415 Md. 567, 574, 3 A.3d 1210, 1214 (2010) (quoting *Starr v. State,* 405 Md. 293, 302, 951 A.2d 87, 92). Here, Arthur moved for judgment of acquittal both at the close of evidence offered by the State and again at the close of all evidence, as permitted by Maryland Rule 4–324. Subsection (a) of that same governing rule requires the defendant to "state with particularity all reasons why the motion should be granted." Md. Rule 4–324(a). This means that a defendant must "argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient." *Starr,* 405 Md. at 303, 951 A.2d at 92–93 (quoting *Fraidin v. State,* 85 Md.App. 231, 244–45, 583 A.2d 1065, 1072 (1991)). To be sure, "an appellant/petitioner is entitled to present the appellate court with a more detailed version of the argument

advanced at trial[; however,] this Court has refused to require trial courts to imagine all reasonable offshoots of the argument actually presented to them before making a ruling on admissibility." *Id.* at 304, 951 A.2d at 93. Accordingly, a defendant "is not entitled to appellate review of reasons stated for the first time on appeal." *Starr,* 405 Md. at 302, 951 A.2d at 92.

With regard to the necessary level of particularity, we find instructive our decision in *Starr v. State,* 405 Md. 293, 951 A.2d 87 (2008), where we held that the defendant failed to preserve his argument for review. There, the defendant had been convicted of first degree assault and related offenses, including openly wearing and carrying a dangerous weapon with intent to injure, after he fired a "sawed-off shotgun" over the head of another person. *Starr,* 405 Md. at 295, 951 A.2d at 88. At trial, the defendant moved for a judgment of acquittal on the grounds that "mere possession of a 'sawed-off shotgun' did not violate [the statute] and that the shotgun was not a dangerous weapon because [it was not listed in the statute as such.]" *Id.* at 301, 951 A.2d at 91. On appeal, however, the defendant argued that he had been charged under the wrong statute because the sawed-off shotgun was, in effect, a handgun, which was expressly excluded from the statutory list of deadly weapons. *Id.* We held that, because the defendant's "trial counsel never argued to the circuit court that the 'sawed-off shotgun' described by the State's witnesses was actually a 'handgun' as that term is defined in [the Criminal Law Article], this argument [was] not . . . preserved for our review." *Id.* at 301–02, 951 A.2d at 92.

Another illustrative case is *Polk v. State,* 378 Md. 1, 835 A.2d 575 (2003), in which the defendant was arrested for disturbing the peace after she began yelling obscenities in a public hospital and then refused an officer's order to lower her voice.[6] At the end of the State's case-in-chief, the defendant moved for a judgment of acquittal, arguing that the officer's

---

6. Although preservation was not expressly at issue in that case, the underlying facts are sufficiently analogous that an examination of defense counsel's trial arguments are helpful.

initial orders to "stop cursing" were unlawfully directed at the content of her speech and that a "domino effect" made her subsequent arrest illegal. She maintained that, by using profanity toward the officer, she was engaging in protected speech. According to [the defendant], because she had not disobeyed a lawful police order and the officer had no reason to arrest her, she rightfully resisted the attempts to arrest her.

*Id.* at 5, 835 A.2d at 577–78. The defendant presented the same argument on appeal, and this Court addressed the issue of whether the officer's order constituted an unconstitutional regulation of the defendant's speech.

Here, neither of Arthur's motions preserved his contention that Stanley's order impermissibly attempted to restrict Arthur's constitutional right to freedom of speech. Arthur cannot even find salvation in reading the two motions in harmony, for neither supplies the essential component lacking from the other. Arthur's motion at the close of all evidence lacked the depth necessary to preserve the issue. In stark contrast to the grounds supplied by counsel in *Polk*, Arthur's argument was simply that the State "failed to show that … he failed to obey a lawful order" and that because the order was not lawful, "there was no right to arrest[.]" Counsel, however, did not explain why the order was unlawful. Maryland Rule 4–324(a) is not satisfied by merely reciting a conclusory statement and proclaiming that the State failed to prove its case.

Reliance on Arthur's first motion is equally futile because, like the defendant in *Starr*, Arthur now appeals on different grounds. At the close of the State's evidence, Arthur argued that he had a right to resist arrest because "he was never told why he was under arrest, what he had done." Yet, before this Court, he now contends that he had a right to resist the arrest because Stanley's order unconstitutionally regulated the content of Arthur's speech. The basic tenets of fairness prevent us from evaluating the trial court's denial of Arthur's motion on grounds not presented to or contemplated by that court.

For these reasons, we will not address Arthur's sufficiency of evidence claim.

## II. Trial Court's Refusal To Administer Arthur's Instruction On The Right To Resist Arrest

■ Both parties also attack the Court of Special Appeals decision regarding Arthur's proposed jury instruction, albeit for different reasons. Arthur submits that the Court erred by condoning the "trial court['s failure] to instruct the jury as to the long-recognized privilege to resist an unlawful warrantless arrest." The State, on the other hand, protests the Court's holding that the issue of an unlawful arrest was factually generated. Alternatively, the State argues that, even if generated, the modified instruction was not required because "the pattern jury instruction sufficiently covered the law under the circumstances."

■■ "We review a trial judge's decision whether to give a jury instruction under the abuse of discretion standard." *See Thompson v. State*, 393 Md. 291, 311, 901 A.2d 208, 220 (2006). Upon the request of any party, a trial court is required to "instruct the jury as to the applicable law and extent to which the instructions are binding." Md. Rule 4–325(c). "The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." *Id.* In other words, "[w]e have interpreted this rule to require a trial judge to give a requested instruction that correctly states the applicable law and that has not been fairly covered in instructions actually given." *State v. Martin*, 329 Md. 351, 356, 619 A.2d 992, 994 (1993). "[T]o merit an instruction, the issue as to which the request is made must have been generated by the evidence adduced." *Id.* at 357, 619 A.2d at 994.

■ For an instruction to be factually generated, the defendant must produce "some evidence" sufficient to raise the jury issue. *See Martin*, 329 Md. at 359–61, 619 A.2d at 996–97 (upholding trial court's refusal to instruct the jury on imperfect self defense because the defendant did not satisfy

the "some evidence" standard). As we described in *Martin*, this standard is a fairly low hurdle for a defendant:

> *Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or "preponderance." The source of the evidence is immaterial; it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support [defense], the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the [defense does not apply.]

*Martin*, 329 Md. at 359, 619 A.2d at 995–96 (quoting *Dykes v. State*, 319 Md. 206, 216, 571 A.2d 1251, 1256 (1990)). *See also Dishman v. State*, 352 Md. 279, 292, 721 A.2d 699, 705 (1998) ("The task of this Court on review is to determine whether the criminal defendant produced the minimum threshold of evidence necessary to establish a *prima facie* case[.]") The evidence is evaluated in the light most favorable to the accused. *See Brogden v. State*, 384 Md. 631, 650, 866 A.2d 129, 140 (2005).

In this case, we agree with the Court of Special Appeals that the issue of an unlawful arrest was generated. In denying Arthur's contention that the underlying arrest was unlawful, the trial court reasoned that "[f]rom the Defendant's initial, own testimony, best case he was littering. . . . I mean, looking at it objectively the Defendant's own conduct constituted a particular offense." Yet, on the witness stand, Arthur explained that he had been tossing the newspaper with a friend, and that it had never hit Stanley's police cruiser. Moreover, Arthur and his witnesses testified that, after the newspaper volley, Stanley jumped out of his car and began harassing Arthur for no apparent reason, and would not tell him why he was being arrested. Examining this evidence in the light most favorable to Arthur, we agree with the Court of

Special Appeals that, "[i]f the jury believed [Arthur] and his witnesses, they might conclude that [ ] Stanley had no reason to arrest [Arthur]." *Arthur,* 193 Md.App. at 457, 997 A.2d at 906.

 Our next step is to evaluate whether the pattern jury instruction fairly covered the issue of whether Stanley had probable cause to arrest Arthur. "[A] requested instruction need not be given where other instructions 'fairly cover' the subject matter of the requested instruction." *See Gunning v. State,* 347 Md. 332, 348, 701 A.2d 374, 382 (1997). It is on this point that we diverge from the Court of Special Appeals. Our intermediate appellate court reasoned that the "reasonable grounds" language provided in the pattern instruction "properly conveys the concept of probable cause." *Arthur,* 193 Md.App. at 457–58, 997 A.2d at 906. In doing so, that Court hung its hat on language we have used in describing probable cause as "a non-technical conception of a reasonable ground for belief of guilt." *Id.* at 458, 997 A.2d at 906 (citing, *inter alia, Haley v. State,* 398 Md. 106, 132–33, 919 A.2d 1200 (2007)). Yet, we have also used the same phrase to describe "reasonable articulable suspicion," a standard that is not sufficient to permit an arrest:

> The second level of interaction, known as a *Terry* stop, allows a police officer to forcibly stop a citizen if the officer has **reasonable grounds** for doing so, *i.e.,* that the officer can point to specific and articulable facts that warrant the stop. The level of suspicion necessary to constitute reasonable, articulable suspicion is less demanding than that for probable cause.

*Haley,* 398 Md. at 132, 919 A.2d at 1214–1215 (citations omitted) (emphasis added). *See also Motor Vehicle Admin. v. Shea,* 415 Md. 1, 16, 997 A.2d 768, 776–777 (2010) ("[T]he phrase 'reasonable grounds,' in [Section 16–205.1 of the Transportation Article] equates to 'a reasonable articulable suspicion,' as that term is understood in Fourth Amendment parlance."). Because the "reasonable grounds" language can be used to describe two different standards, it can be ambiguous,

depending on the context. If the jury interpreted the given jury instruction as meaning "reasonable articulable suspicion," it may have wrongly concluded that the "probable cause" element of the resisting arrest crime was met.

The "NOTES ON USE" commentary to the Pattern Instruction suggests that the drafters recognized that the naked pattern instruction would not work well in all contexts. Instead, they suggested that trial courts, in cases where probable cause is at issue, modify the "reasonable grounds" factor accordingly: "If probable cause is an issue, the court should draft a fact-specific version of, or supplement to, [the requirement that 'the officer had reasonable grounds to believe that the defendant [was committing] [had committed] (crime)']." Maryland State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions* 4:27.1 (2007). Here, because the evidence presented at trial generated the issue of whether Stanley had probable cause to arrest Arthur, we think the only way for Arthur to have a fair trial is for the jury to understand the law concerning his right to resist an unlawful arrest. A reasonable juror, without the benefit of an instruction on this point, might believe that, when a police officer tells him he is under arrest, he must succumb, regardless of the circumstances, and wait for relief (and release) until he is taken before a judicial officer. The trial court abused its discretion in failing to provide the jury instruction on such law. This error may have unfairly prejudiced Arthur on both counts, because the jury may have improperly believed that if Stanley had "reasonable grounds" to arrest Arthur, Stanley's earlier order must have been a lawful one. Accordingly, Arthur is entitled to a new trial on the charges of resisting arrest and failure to obey a lawful order.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL ON BOTH COUNTS. COSTS DIVIDED EQUALLY BETWEEN PETITIONER AND RESPONDENT.**

HARRELL, BATTAGLIA, and MURPHY, JJ., dissent.

MURPHY, J., dissenting, in which HARRELL and BATTAGLIA, JJ., join.

I agree that, when conflicting evidence has generated the issue of whether the defendant's warrantless arrest was unlawful, and the offense of resisting a warrantless arrest is the only charge before the jury, the defendant is entitled to a jury instruction that he or she had the right resist an unlawful warrantless arrest.[1] If the jury had acquitted the Petitioner of the "failure to obey" charge,[2] I would join the judgment that he is entitled to a new trial on the "resisting" charge. In my opinion, however, the failure to deliver such an instruction does not constitute error when the jury has convicted the defendant of both (1) the crime for which he or she was arrested, and (2) the crime of resisting arrest.

In the case at bar, the Petitioner's "failure to obey" conviction necessarily established that he did not have the right to resist his warrantless arrest on that charge. That conviction rendered unnecessary, as a matter of law, an instruction to the effect that a defendant who is subjected to an unlawful warrantless arrest may use reasonable force to resist that arrest. Because the Petitioner was convicted of both charges, I dissent from the holding that he is entitled to a new trial.

Judges HARRELL and BATTAGLIA have authorized me to state that they join this dissenting opinion.

---

1. For a suggested instruction to that effect, see David E. Aaronson, *Maryland Criminal Jury Instructions and Commentary,* § 7.54(B) (3rd ed. 2009).

2. I agree with the majority's "preservation" analysis, and would therefore affirm the Petitioner's "failure to obey" conviction.