3 A.3d 1210

**STATE of Maryland**

**v.**

**Lewis RICH.**

**No. 128, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 31, 2010.

---

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for Petitioner.

Michael P. Spence, Assigned Public Defender, of Wilmer Cutler Pickering Hale and Dorr, LLP of Washington, D.C.; Paul B. DeWolfe, Public Defender, of Maryland Office of the Public Defender of Baltimore, MD, on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

In the Circuit Court for Baltimore City, a jury convicted Lewis Rich, Respondent, of voluntary manslaughter. Respondent noted an appeal to the Court of Special Appeals, and argued that (in the words of his brief) "THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY ON VOLUNTARY MANSLAUGHTER DESPITE THE LACK OF

ANY EVIDENCE OF HOT BLOODED RESPONSE TO LEGALLY ADEQUATE PROVOCATION." After the Court of Special Appeals exercised its discretion to conduct a "plain error" review of this argument, and vacated the judgment of conviction,[1] this Court granted the State's petition for writ of certiorari. From our review of the record, we are persuaded that (1) Respondent's argument should be rejected under the "invited error" doctrine, and (2) there is no merit in the argument that the jurors did not receive *any* evidence of hot blooded response to legally adequate provocation. We shall therefore reverse the judgment of the Court of Special Appeals.

## Background

The murder occurred in a McDonald's restaurant, on a stairwell leading to the second floor. It was the State's theory of the case that Respondent and an accomplice attempted to rob the victim, and that it was Respondent who stabbed the victim to death. Respondent made a post-arrest statement, in which he admitted that he followed the victim into the stairwell, but denied that he intended to rob the victim and denied that he stabbed the victim. Respondent told the investigating officers that he went into the stairwell to purchase marijuana from the victim, and that he punched the victim because he was offended by the victim's utterance of a racial slur, but claimed that the victim had not been robbed or stabbed during the time that both he and the victim were in the stairwell.

The opening statement of Respondent's trial counsel included the following comments:

And, you're going to listen to Mr. Rich's statement. Mr. Rich is honest and open. What he tells the police is consistent with what you're going to see on that tape. He tells the police: Yes, I was there. He puts himself there. Yes, I went there to buy drugs, to buy marijuana. And, you're going to hear that marijuana is found on [the victim].

---

1. *Rich v. State*, No. 457, September Term, 2008, unreported opinion filed August 10, 2009.

What he said matches the evidence. [The victim] also had a large amount of money on him; almost $500.00. Mr. Rich says: I was there to do a drug deal, to buy marijuana. That matches the evidence.

In his statement, he's going to tell you that they got into an argument. He got into an argument with [the victim] about whether it was hash or marijuana. Something about the drugs caused an argument. It wasn't just out of the blue. Premeditated murder at a downtown McDonald's at 10:45 in the morning[?] [P]lanned? I don't think so. They get to arguing. He said they got into an argument. And, he's called a derogatory name and he's spit at. And, he tells the police: I did react to that. I punched him. I plucked him. I had a closed fist. I punched him in the face.

And, you're going to hear from the medical examiner. It matches the evidence. There's abrasions and bruising on the face. And, he tells the detectives that he never saw a knife. He doesn't know what happened. He just left after that.

And, you're going to hear when Detective Bradshaw tells him—tells him that [the victim] got stabbed. He tells him that [the victim] later died. The shock, the surprise, is genuine in Mr. Rich. He had no idea when he left that McDonald's that day that he would be sitting here tried for first degree murder. When he left, [the victim] was walking. He was talking. He was yelling. And, you're going to see it—on the video, [the victim] actually makes it all the way to the top of the stairs before coming back down. [The victim] was alive. Mr. Rich has no blood on his hands. He didn't know what happened. And, you're going to hear that shocking surprise in his voice.

Respondent's post-arrest statement was introduced into evidence during the State's case-in-chief. When the prosecutor "rested" the State's case, Respondent's trial counsel made "a motion for judgment of acquittal on all charges," and presented the following argument in support of that motion:

Mr. Rich is charged with first degree premeditated murder. Even, at this point, looking at all of the evidence in a light most favorable to the State, the State has not proven that there was any kind of premeditation involved in this case.

**Even assuming that Mr. Rich did the stabbing, we have the argument. We have the provocation.** One stab wound and the fact that he was still alive and appeared to be—from—at least from the front, okay to the some of the witnesses, even one of the witnesses testified: Man, you're okay. You're okay. I don't think the State has even shown enough for premeditated murder to go [to] the jury.

(Emphasis added).

The closing argument of Respondent's trial counsel included the following comments:

Now, what do we know? We know that ... We hear from the [McDonald's] workers that there's a commotion up there. There's yelling. There's a scuffle. There's something going on up there.... We know this. We agree on this.

\*　　　\*　　　\*

Mr. Rich was honest with the police. He went there, and he told them what happened. He didn't try to make up any lie saying I wasn't there ... He puts himself there. He puts himself right there. And he puts himself in a fight.

He told the detective on the tape, "We got into a fight over hash and marijuana. And he called me an "N" and he spit on me, and I got angry, and I punched him."

Respondent's trial counsel filed a written request titled "PROPOSED JURY INSTRUCTIONS," that expressly included a request for the following instructions:

17. MPJI 4.17 Homicide—1st & 2nd degree murder

18. MPJI 4.17.2 1st, 2nd degree murder, voluntary manslaughter (imperfect self defense)

**19. MPJI 4.17.4 voluntary manslaughter (hot blooded response to legally adequate provocation).**

(Emphasis added).

The Circuit Court's instructions included a "voluntary manslaughter" instruction that was in substantial compliance with MPJI 4.17.4. Respondent's trial counsel noted no exceptions to the instructions other than an "exception to the aiding and abetting language as used on the verdict sheet and the charges." During jury deliberations, the jurors submitted the following question: "Is spitting a legally adequate provocation?" The Circuit Court gave the following answer to that question:

Spitting onto a person's body may be battery.... That the spitter caused offensive physical contact with, in this case, the defendant, that the contact was a result of an intentional or reckless act of the spitter and was not accidental and that the contact was not consented to by the defendant or was not legally justified.

Respondent's trial counsel did not note an exception to this answer.

The jury found Respondent guilty of voluntary manslaughter, and not guilty of all remaining charges. The Court of Special Appeals reversed Respondent's conviction on the ground that the evidence presented to the jury was insufficient to generate the issue of whether Respondent acted in "hot-blooded response to legally adequate provocation." The Court noted that, although Respondent specifically requested the instruction and appears to have benefitted from it in that he was convicted of a lesser charge than first-or second-degree murder, "the instructional error materially affected his right to a fair and impartial trial," and therefore, warranted a finding of plain error.

### Discussion

### I.

■ We hold that the Court of Special Appeals erred in concluding that the evidence was insufficient to generate the

issue of whether Respondent was guilty of manslaughter. In *Starr v. State,* 405 Md. 293, 951 A.2d 87 (2008), this Court stated:

It is well settled that "appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal." *Lotharp v. State,* 231 Md. 239, 240, 189 A.2d 652, 653 (1963). A criminal defendant who moves for judgment of acquittal is required by Md. Rule 4–324(a) to "state with particularity all reasons why the motion should be granted[,]" and is not entitled to appellate review of reasons stated for the first time on appeal. *State v. Lyles,* 308 Md. 129, 135–36, 517 A.2d 761, 764–65 (1986); *Muir v. State,* 308 Md. 208, 218–19, 517 A.2d 1105, 1110 (1986); *Graham v. State,* 325 Md. 398, 416–17, 601 A.2d 131, 140 (1992).

*Id.* at 302, 951 A.2d at 92. The "rules for preservation of issues have a salutary purpose of preventing unfairness and requiring that all issues be raised in and decided by the trial court, and these rules must be followed in all cases ... The few cases where we have exercised our discretion to review unpreserved issues are cases where prejudicial error was found and the failure to preserve the issue was not a matter of trial tactics." *Conyers v. State,* 354 Md. 132, 150, 729 A.2d 910, 919 (1999). It is clear that the tactics employed by Respondent's trial counsel included the argument that, if Respondent were guilty of any offense, he was only guilty of manslaughter. Under these circumstances, because Respondent was convicted by a jury, he is not entitled to appellate relief on the basis of a "sufficiency" argument that is in direct conflict with the argument actually asserted by his trial counsel.[2]

---

2. Because Respondent's presence at the scene of the homicide was established by the restaurant's surveillance camera, and because of what Respondent said during his post-arrest statement, it was obviously in Respondent's best interest that voluntary manslaughter be included among the potential verdicts. Under these circumstances, if (1) Respondent's trial counsel had persuaded the Circuit Court that the

 In the case at bar, because the manslaughter instruction was specifically requested by Respondent's trial counsel, the doctrine of invited error is applicable to his argument that "the instructional error materially affected his right to a fair and impartial trial." The "invited error" doctrine is a "shorthand term for the concept that a defendant who himself invites or creates error cannot obtain a benefit—mistrial or reversal—from that error." *Klauenberg v. State,* 355 Md. 528, 544, 735 A.2d 1061, 1069 (1999), quoting *Allen v. State,* 89 Md.App. 25, 43, 597 A.2d 489, 498 (1991) *cert. denied,* 325 Md. 396, 601 A.2d 129 (1992). "The doctrine stems from the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal." *United States v. Brannan,* 562 F.3d 1300, 1306 (11th Cir.2009).

 The doctrine is applicable to appellate review of jury instructions specifically requested by the criminal defendant's counsel. *Bromley v. State,* 150 P.3d 1202, 1213 (Wyo.2007); *Vanvorst v. State,* 1 P.3d 1223, 1229 (Wyo.2000). In *State v. Studd,* 137 Wash.2d 533, 973 P.2d 1049 (1999), the Supreme Court of Washington stated:

> [W]e have also held that "[a] party may not request an instruction and later complain on appeal that the requested instruction was given." *State v. Henderson,* 114 Wash.2d 867, 870, 792 P.2d 514 (1990) (emphasis omitted) (quoting *State v. Boyer,* 91 Wash.2d 342, 345, 588 P.2d 1151 (1979)). *Henderson* also involved erroneous WPIC instructions proposed by a defendant and later complained of, and we held there that "even if error was committed, *of whatever kind,* it was at the defendant's invitation and he is therefore precluded from claiming on appeal that it is reversible error." *Henderson,* 114 Wash.2d at 870, 792 P.2d 514 (emphasis added). *Henderson* is directly on point. There can be no

manslaughter charge should not go to the jury, and (2) Respondent had been convicted of second degree murder, Respondent would have a strong "ineffective assistance" argument for post-conviction relief.

doubt that this is a strict rule, but we have rejected the opportunity to adopt a more flexible approach.

\* \* \*

Here, the record is quite clear ... that these defendants requested instructions modeled after WPIC 16.02. Consequently, the doctrine of invited error prevents them from now complaining about the trial court acceding to their request to give a certain instruction ... We reached this conclusion despite the fact that "the unconstitutional instruction was standard in this state, *In re Hagler,* 97 Wash.2d 818, 819, 650 P.2d 1103 (1982), and had been *expressly approved* by this court." *Griffith,* 102 Wash.2d at 104, 683 P.2d 194[.]

*Id.* at 1055–56. (Emphasis in original).

In *State v. Fabricatore,* 281 Conn. 469, 915 A.2d 872 (2007), the Supreme Court of Connecticut stated:

In *State v. Duncan,* 96 Conn.App. 533, 557, 901 A.2d 687, *cert. denied,* 280 Conn. 912, 908 A.2d 540 (2006), the defendant claimed that the trial court improperly had instructed the jury on the elements of alteration of a firearm identification mark or number and the presumptive inference that the jury was permitted to draw. After the court had given its oral instructions to the jury, the prosecutor directed the court's attention to a discrepancy between the oral charge and the written charge that was to be submitted to the jury on the elements of alteration. *Id.,* at 558, 901 A.2d 687. The court and both counsel agreed that the written charge was incorrect, and, upon reviewing a corrected version of the written charge, "[b]oth the prosecutor and defense counsel stated that they were 'satisfied' with the correction." *Id.* The Appellate Court concluded that the defendant had waived any challenge to the alleged constitutional violation because "the defendant not only failed to object to the court's instruction, but also voiced satisfaction with it. . . . To allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce

potentially harmful error, and then ambush the state with that claim on appeal...."

* * *

In the present case, defense counsel not only failed to object to the instruction as given or to the state's original request to charge the jury with the duty to retreat, but clearly expressed his satisfaction with that instruction, and in fact subsequently argued that the instruction as given was proper. Indeed, defense counsel himself addressed the duty to retreat in his own summation. Thus, the defendant accepted the duty to retreat theory presented by the prosecutor, and openly acquiesced at trial, thereby waiving his right to challenge the instruction on appeal. Under this factual situation, we simply cannot conclude that "injustice [has been] done to either party"; (internal quotation marks omitted) *State v. Whitford, supra,* 260 Conn. [610] 620, 799 A.2d 1034 [ (2002) ]; or that "the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial...." *State v. Golding, supra,* 213 Conn. [233] 240, 567 A.2d 823 [ (1989) ].

*Id.* at 879–880. (Footnotes omitted).

In *People v. Robertson,* 34 Ill.App.3d 762, 340 N.E.2d 213 (1975), the Appellate Court of Illinois, Third District was presented with the very same argument that Respondent has presented in the case at bar: "Defendant argued during the trial that, if the jury did not decide to acquit defendant, evidence of provocation was sufficient to reduce the crime from murder to voluntary manslaughter.... On appeal, defendant contends that the evidence of provocation by the victim was inadequate to support the voluntary manslaughter verdict." *Id.* at 215. While rejecting that argument, the *Robertson* Court stated:

Defendant is actually complaining that it was error for the court to accede to his request for instructions on voluntary manslaughter. This, to put it mildly, is not the usual stance of a defendant in a criminal appeal. Whether we characterize this issue as involving invited error (*People v.*

*Clements,* 316 Ill. 282, 147 N.E.2d [N.E.] 99 (1925)) or as raising a new theory of defense on appeal that was not raised at trial (*People v. Brown,* 11 Ill.App.3d 67, 296 N.E.2d 77 (2d Dist.1973)), defendant's contention is without merit.

This precise issue was presented to this court in *People v. Curwick* (3d Dist.1975), 33 Ill.App.3d 757, 338 N.E.2d 468, where we held that a defendant found guilty of voluntary manslaughter may not contest the sufficiency of the evidence of manslaughter after he requested the manslaughter instruction. Our decision in *Curwick* is controlling in the case at bar.

*Id.*

There is a distinction between a plain error and an invited error. In *Puckett v. United States,* —— U.S. ——, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), the United States Supreme Court stated:

We explained in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), that Rule 52(b) review—so-called "plain-error review"—involves four steps, or prongs. First, there must be an error or defect—some sort of "[d]eviation from a legal rule"—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. *Id.,* at 732–733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. *See id.,* at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the district court proceedings." *Ibid.* Fourth and finally, if the above three prongs are satisfied, the court of appeals has the discretion to remedy the error—discretion which ought to be exercised only if the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.,* at 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Meeting all four prongs is difficult, "as it should be."

*United States v. Dominguez Benitez*, 542 U.S. 74, 83, n. 9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

*Id.* at ——, 129 S.Ct. at 1429.

In *United States v. Perez*, 116 F.3d 840 (9th Cir.1997), on en banc review of a claim that *Olano* had overruled the invited error doctrine as the doctrine had been applied to jury instructions specifically requested by the defendant, the United States Court of Appeals for the Ninth Circuit stated:

> The issue we resolve today is the viability of this circuit's "invited error" doctrine following the Supreme court's decision in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The three-judge panel ("panel") suggested that *Olano* overruled that doctrine, at least in the context of jury instructions specifically requested by the defendant. *United States v. Perez*, 67 F.3d 1371, 1385 n. 13 (9th Cir.1995). On en banc review, we conclude that *Olano* limits our application of the invited error doctrine to those rights deemed waived, as opposed to merely forfeited, that is, "known rights" that have been "intentionally relinquished or abandoned." *See Olano*, 507 U.S. at 733 [113 S.Ct. 1770] (defining waiver).
>
> \* \* \*
>
> We have held repeatedly that where the defendant himself proposes allegedly flawed jury instructions, we deny review under the invited error doctrine ... The doctrine reflects the policy that invited errors "are less worthy of consideration than those where the defendant merely fails to object."
>
> \* \* \*
>
> ▉ In *Olano*, the Court provides an extensive framework for plain error review. 507 U.S. at 731–37 [113 S.Ct. 1770]. *Olano* does not, however, specifically address the concept of invited error. From this omission, the panel concluded that plain error review is appropriate for invited errors:
>
> > *Olano* lays out a framework to be applied to all instances where defendant's counsel has failed to properly preserve

error for appeal. *Olano* does not distinguish between errors counsel fails to object to and errors that counsel invites affirmatively. Rule 52(b) does not make this distinction either.

*Perez,* 67 F.3d at 1385 n. 13. Although *Olano* does not directly address so-called "invited error," it certainly addresses the difference between forfeited and waived rights. 507 U.S. at 732–34 [113 S.Ct. 1770]. Accordingly, we cannot agree that *Olano* completely overruled our invited error doctrine. Instead, we must reformulate that doctrine to conform to *Olano's* discussion of waiver and forfeiture.

Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the "intentional relinquishment or abandonment of a known right." *Olano,* 507 U.S. at 733 [113 S.Ct. 1770] (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). **Forfeited rights are reviewable for plain error, while waived rights are not.** *Id.* "If a legal rule was violated during the District Court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Id.* 507 U.S. at 733–34 [113 S.Ct. 1770].

Until now, our invited error doctrine has focused solely on whether the defendant induced or caused the error. *See Baldwin,* 987 F.2d at 1437 (citing *United States v. Montecalvo,* 545 F.2d 684, 685 (9th Cir.1976), and *Guthrie,* 931 F.2d at 567). We now recognize, however, that we must also consider whether the defendant intentionally relinquished or abandoned a known right. *Olano,* 507 U.S. at 733 [113 S.Ct. 1770]. If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable.

We do not mean to suggest that a defendant may have jury instructions reviewed for plain error merely by claiming he did not know the instructions were flawed. **What we are concerned with is evidence in the record that the defendant was aware of, i.e., knew of, the relinquished or abandoned right.** For example, in *Baldwin,* the defendant

was charged with conspiracy to distribute cocaine. 987 F.2d at 1436. The court's proposed instructions left out "overt act" as an element of the crime. *Id.* The government excepted to the instructions because they omitted this requirement. *Id.* at 1437. The defendant's attorney indicated that he did not believe it was necessary to instruct on the overt act requirement. *Id.* This scenario is an example of waiver because the record reflects that the defendant was aware of the omitted element and yet relinquished his right to have it submitted to the jury ... Waiver occurred in each of these cases because the defendant considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.

*Id.* at 842–45. (Footnotes and internal citations omitted). (Emphasis supplied). We agree with this analysis. In the case at bar, when Respondent's trial counsel (1) argued that the issue of voluntary manslaughter was generated by the evidence, and (2) made a specific request for a voluntary manslaughter instruction, that action constituted an intentional waiver of the right to argue on appeal that the evidence was insufficient to support the voluntary manslaughter conviction.

## II.

It is well settled that provocative words—even if accompanied by some physical contact—do not constitute adequate provocation to mitigate a murder to a manslaughter. Cases so holding are cited and discussed in Judge Charles E. Moylan, Jr., *Criminal Homicide Law,* § 9.11, pp. 180–182 (2002).[3] In the case at bar, however, the conflicting evidence

---

**3.** Cases rejecting the argument that the murder defendant was entitled to a manslaughter instruction do not provide support for the argument that an appellate court is required to reverse the voluntary manslaughter conviction of a defendant who (1) was charged with murder, (2) argued that he was entitled to a voluntary manslaughter instruction, (3) persuaded the Circuit Court to deliver that instruction, and (4) was acquitted of murder, but convicted of voluntary manslaughter by the jury. As the Court of Special Appeals has stated:

was sufficient to generate a genuine jury question on the issue of whether Respondent was guilty of voluntary manslaughter. In *Christian v. State*, 405 Md. 306, 951 A.2d 832 (2008), this Court stated:

> In *Girouard* [*v. State*, 321 Md. 532, 583 A.2d 718 (1991) ], we stated the test for determining when the defense of provocation may apply as follows:
>
> "1. There must have been adequate provocation;
>
> 2. The killing must have been in the heat of passion;
>
> 3. It must have been a sudden heat of passion—that is, the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool;
>
> 4. There must have been a causal connection between the provocation, the passion, and the fatal act."
>
> *Girouard*, 321 Md. at 539, 583 A.2d at 721. **We have recognized that the defense may be raised in cases involving mutual affray, assault and battery, . . . and anything the natural tendency of which is to produce passion in ordinary men and women.** *Id.* at 538, 583 A.2d at 721. *See also* [*State v.*] *Faulkner*, 301 Md. [482] at 486, 483 A.2d [759] at 761–62 [ (1984) ]; *Glenn v. State*, 68 Md.App. 379, 403–04, 511 A.2d 1110, 1123, *cert. denied*, 307 Md. 599, 516 A.2d 569 (1986); 1 RONALD A. ANDERSON, WHAR-

---

It is always a defense to prove that one is less culpable than charged. It is not a defense to prove that one is more culpable than charged. One does not defend against a charge of second-degree murder by proving that one was really guilty of first-degree murder. To prove culpability at a given level, the State is not required to disprove greater culpability[.]

\* \* \*

Whenever there is doubt as to the appropriate level of guilt, the defendant, of course, receives the benefit of the doubt and is convicted only at the lower level. A defendant is never, however, entitled to total exculpation simply because there is ambiguity as to his level of guilt. Different levels of culpability are not neatly abutting and mutually exclusive so as to render one necessarily inconsistent with the other.

*Williams v. State*, 100 Md.App. 468, 476–78, 641 A.2d 990, 993–995 (1994).

TON'S CRIMINAL LAW AND PROCEDURE § 276 (1957).

*Id.* at 322–23, 951 A.2d at 842 (footnotes omitted). (Emphasis added).

In *Sims v. State,* 319 Md. 540, 573 A.2d 1317 (1990), this Court stated:

> Mutual combat has been recognized as a possible source of adequate provocation. *Carter v. State,* 66 Md.App. 567, 572, 505 A.2d 545 (1986); *Shuck v. State,* 29 Md.App. 33, 38–40, 349 A.2d 378 (1975), *cert. denied,* 278 Md. 733 [735] (1976); *Whitehead v. State, supra,* 9 Md.App. at 11, 262 A.2d 316; R. Perkins and R. Boyce, *Criminal Law* 88–91 (3d ed. 1982); 2 C. Torcia, *Wharton's Criminal Law* § 159 (14th ed. 1979). The rule of provocation will apply when persons enter into angry and unlawful combat with a mutual intent to fight and, as a result of the effect of the combat, the passion of one of the participants is suddenly elevated to the point where he resorts to the use of deadly force to kill the other solely because of an impulsive response to the passion and without time to consider the consequences of his actions.

*Id.* at 551–52, 573 A.2d at 1322.

From the evidence presented, the jury was entitled to (1) accept Respondent's claim that he had been vilified and spat upon by the victim, (2) find that the victim's conduct was something "the natural tendency of which is to produce passion in ordinary men and women," (3) reject Respondent's claim that his retaliation was limited to punching the victim, and (4) find that Respondent inflicted a single stab wound upon the victim during mutual combat.

It is clear that the case at bar does not present the hypothetical question of whether a voluntary manslaughter conviction should be reversed on the ground that (1) at the close of all of the evidence, the defense's argument for a judgment of acquittal as to voluntary manslaughter included an express concern that—even though the evidence was insufficient to support a verdict of guilty on that charge—the jury

might "compromise," acquitting the defendant of murder but convicting the defendant of manslaughter, (2) the trial court, *erroneously* finding that the evidence was sufficient, denied that motion, and (3) the defendant was convicted of voluntary manslaughter. While we must leave to another day the issue of whether a voluntary manslaughter conviction must be reversed under those circumstances, we note that in *Criminal Homicide Law,* Judge Moylan states:

> A conviction for manslaughter does not require affirmative proof of non-malice. It simply involves, as a coincidental explanation of why the conviction was not of a higher degree, the non-proof of malice. Non-proof of malice does not necessarily imply proof of non-malice. The confusion between the non-proof of malice and the proof of non-malice is but an instance of what *In re Lakeysha P.* [106 Md.App. 401, 433, 665 A.2d 264, 279 (1995)] refers to as "the semantic fallacy of the false affirmative." *Lakeysha P.* described how the semantic fallacy came about[.]
>
> \* \* \*
>
> If malice and non-malice, indeed, were pointed in opposite directions, there could result an unintended "eye in the hurricane" of guilt. If a jury were unanimously persuaded that the defendant was guilty of an unexcused and unjustified homicide but were in a state of absolute equilibrium as to whether that guilt were mitigated or unmitigated, the result, for one caught in the snare of the false affirmative, would be that the homicidal agent would walk free.

Judge Charles E. Moylan, Jr., *Criminal Homicide Law,* § 6.5, pp. 139–140 (2002).

For the reasons stated above, there is no merit in the argument that Respondent is entitled to walk free.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**