822 A.2d 551

Nancy HONEYCUTT, Personal Representative of the Estate of Ron Honeycutt

v.

Christine HONEYCUTT, et al.

No. 68, Sept. Term, 2002.

Court of Special Appeals of Maryland.

May 2, 2003.

Taras A. Vizzi, Baltimore, for appellant.

Jacqueline M. Wood (Jefferson V. Wright, Miles & Stockbridge, P.C., on brief), Baltimore, for appellees.

Argued before SONNER, KENNEY, RAYMOND G. THIEME JR. (Ret'd, Specially Assigned), JJ.

THIEME, J.

In this appeal, we review two orders entered by the Circuit Court for Baltimore City, which granted two separate Motions for Summary Judgment filed by Bank of America, N.A., appellee, against Sheldon, Inc., appellant ("Sheldon"), and Nancy Honeycutt, Personal Representative of the Estate of Ron Honeycutt, appellant ("the Estate"). Appellants' claims arose when Christine Honeycutt ("Christine Honeycutt") withdrew approximately $13,000 from the account of Sheldon maintained with the Bank. Christine Honeycutt was a former officer of Sheldon and, at the time of the withdrawal, was an authorized signatory on Sheldon's account.

On March 13, 2000, Sheldon commenced an action against Christine Honeycutt, the former vice-president and secretary of Sheldon, in the District Court of Maryland for Baltimore City in connection with her withdrawal of funds from Sheldon's account with the Bank (hereinafter referred to as the "District Court action"). On May 4, 2000, Sheldon amended its original Complaint in the District Court to assert additional claims against Christine Honeycutt and to add the Bank as a defendant. In its Amended Complaint, Sheldon asserted claims for conversion, breach of contract, and negligence against the Bank for permitting the allegedly unauthorized withdrawal.

On June 15, 2000, Sheldon filed a Second Amended Complaint in the District Court, adding another claim against Christine Honeycutt and, at the same time, requested a jury trial. The District Court denied Sheldon's untimely request for a jury trial on June 29, 2000.

On January 8, 2001, the Estate filed a Complaint against Christine Honeycutt and the Bank in the Circuit Court for Baltimore City and requested a jury trial (hereinafter referred to as the "Circuit Court action"). The Estate, in its Complaint, asserted claims for conversion, breach of contract, and negligence against the Bank for permitting the allegedly unauthorized withdrawal of funds from Sheldon's account with the Bank.

On March 9, 2001, a Third Amended Complaint was filed in the District Court action adding the Estate as a co-plaintiff. The Estate asserted the same claims against the Bank— conversion, breach of contract, and negligence—as it had previously asserted in the Circuit Court action. The Estate also requested a jury trial.

On May 22, 2001, the Bank filed a Motion for Summary Judgment in the Circuit Court action. In its Motion, the Bank argued that (i) the Estate was not the real party in interest and did not have standing to sue the Bank because the claims asserted by the Estate were for wrongs allegedly committed against Sheldon as a corporate entity and, therefore, could only be brought by Sheldon, and (ii) at the time Christine Honeycutt withdrew funds from Sheldon's account, she was an authorized signatory on the account and, therefore, the Bank committed no legal wrong when it permitted the withdrawal. Neither of the parties requested a hearing.

On June 18, 2001, the Honorable Thomas E. Noel granted the Bank's Motion for Summary Judgment and dismissed the Estate's claims against the Bank. Judge Noel did not issue a memorandum opinion.

Shortly after the circuit court granted the Bank's Motion for Summary Judgment, the original Complaint in the Circuit Court action was amended to add Sheldon as a co-plaintiff. In

the Amended Complaint, Sheldon asserted the same claims against the Bank—conversion, breach of contract and negligence—that had previously been asserted by the Estate (on which summary judgment had been granted) and that were being asserted by Sheldon in the pending District Court action.

On July 9, 2001, a hearing was held in the District Court action on the Bank's Motion to Dismiss the Estate for improper joiner. At that hearing, the Honorable John P. Miller stayed further proceedings in the District Court action until final disposition of the Circuit Court action.

On August 1, 2001, the Bank filed another Motion for Summary Judgment in the Circuit Court action, this time as to Sheldon's claims. In that Motion, the Bank argued that (i) the District Court for Baltimore City first acquired jurisdiction over the claims brought by Sheldon and, therefore, the claims should be heard by the District Court, and (ii) at the time Christine Honeycutt withdrew funds from Sheldon's account, she was an authorized signatory on the account and, therefore, the Bank committed no legal wrong when it permitted the withdrawal.

A hearing on the Bank's second Motion for Summary Judgment was held on September 21, 2001, before the Honorable John Carroll Byrnes. At the conclusion of the hearing, Judge Byrnes granted the Bank's Motion for Summary Judgment and dismissed Sheldon's claims against the Bank.

Appellants' claims against Christine Honeycutt in the Circuit Court action were tried without a jury on February 15, 2002. The Honorable William D. Quarles presided and rendered a verdict in favor of the Estate and against Christine Honeycutt on the breach of contract claim.

The Estate and Sheldon filed a timely Notice of Appeal, on March 13, 2002, and now present two questions for our review:

   I. WAS THE LOWER COURT LEGALLY CORRECT IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF APPELLEE, BANK OF AMERICA, N.A. ("APPELLEE BANK") AGAINST APPEL-

LANT SHELDON, INC. AND APPELLANT ES-
TATE, ON THE BASIS THAT THERE WAS NO
FACTUAL EVIDENCE TO SUPPORT THE CON-
TENTION THAT APPELLEE BANK HAD
BREACHED ITS AGREEMENT AND/OR HAD
BEEN NEGLIGENT IN THIS MATTER?

II.  DID THE LOWER COURT ABUSE ITS DISCRE-
TION BY REFUSING TO GRANT A CONTINU-
ANCE TO EITHER APPELLANT IN ORDER TO
PURSUE DISCOVERY AGAINST THE APPELLEE
BANK IN THIS CASE?

For the reasons that follow, we shall affirm the judgment of
the circuit court.

### Factual Background

Ron Honeycutt was the president, treasurer, and sole stock-
holder of Sheldon, Inc., which trades as Sheldon's Lounge, a
bar located in Baltimore City. Christine Honeycutt was, at one
time, Ron Honeycutt's wife and held the position of vice-
president and secretary of Sheldon.[1]  On July 1, 1984, Ron
Honeycutt and Christine Honeycutt opened a business check-
ing account with Maryland National Bank, now known as
Bank of America, N.A., in the name of Sheldon's Lounge.[2]  At
that time, Ron Honeycutt and Christine Honeycutt executed a
signature card for the account.  The signature card read, in
pertinent part:

In consideration of the opening of this account and the
maintenance thereof by Maryland National Bank (hereinaf-
ter "Bank"), the signer(s) (hereinafter "depositor") by the
signature(s) subscribed below agree(s) to the Rules and

---

1.  In 1992, Ron Honeycutt and Christine Honeycutt were divorced and,
pursuant to the couple's separation agreement, Christine Honeycutt
agreed to waive all of her interest in Sheldon, Inc., for the sum of
$10,000.  It is undisputed that Mr. Honeycutt met this obligation and
that the Separation Agreement was otherwise valid.

2.  Bank of America, N.A., is the successor-in-interest to Nations Bank,
N.A., which was the successor-in-interest to Maryland National Bank.

Regulations of Contract provided to depositor herewith. Bank is authorized to recognize and rely upon any of the signature(s) below on checks, drafts and orders for the payment of money, the withdrawals of funds, or the transaction of any business to this account. Depositor acknowledges receipt of a copy of the Rules and Regulations governing this account.

On the signature card, Ron Honeycutt and Christine Honeycutt checked off the box requiring only one signature to transact any business on the account. Ron Honeycutt and Christine Honeycutt were the only authorized signatories on the account and remained the only authorized signatories throughout the entire time that the Bank maintained the account.

Ron Honeycutt died February 10, 2000.[3] On February 15, 2000, Christine Honeycutt withdrew funds in the amount of $13,066.48 from Sheldon's account. At the time of withdrawal, an employee of the Bank retrieved and reviewed the signature card on file with the Bank in order to verify Christine Honeycutt's authority to direct and conduct transactions on Sheldon's account. The Bank did not inquire as to Christine Honeycutt's status with respect to Sheldon, nor did they inquire of anyone at Sheldon as to her status. At the time, the Bank was unaware that Ron Honeycutt had died. The withdrawal took the form of a cashier's check made payable to Christine Honeycutt. According to the signature card on file at the Bank at the time Christine Honeycutt withdrew the funds, she was an authorized signatory on the account and the Bank was authorized to recognize and rely upon her signature on orders for the withdrawal of funds or the transaction of any business to the account. It was Christine Honeycutt's conten-

---

**3.** From 1987 until the date of Ron Honeycutt's death in February 2000, the persons who did the banking at the Frankford Avenue branch, on behalf of Sheldon's Lounge, were Ron Honeycutt and his assistant, Nancy McLaughlin. Ms. McLaughlin was given power of attorney over the account in 1996. In addition, McLaughlin later married Ron Honeycutt and became Nancy Honeycutt.

tion that the bank employees told her that the "money belonged to her."

## Discussion

### I. Summary Judgment

Appellants argue that the circuit court was not legally correct in granting the Bank's Motions for Summary Judgment.[4] We disagree. Judge Noel granted Bank's first Motion for Summary Judgment against the Estate on June 18, 2001. Judge Byrnes granted the Bank's second Motion for Summary Judgment against Sheldon on September 25, 2001. For the sake of clarity, we address each of the motions for summary judgment separately.

### A. Summary Judgment against Sheldon.

During the September 21, 2001 hearing on appellee's motion for summary judgment, the following colloquy occurred, in pertinent part:

> The Court: ... That being stated in the case that is to say they are not consolidated and one is stayed, I see no reason why this matter can[']t be resolved one way or the

---

4. In resolving a motion for summary judgment, the Court must decide whether there is any genuine dispute as to material facts, and if not, whether the moving party is entitled to judgment as a matter of law. *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005, 1010 (1993). A trial court may grant summary judgment only if "the motion and response show that there is no genuine dispute as to any material fact and the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). The Court must view the evidence and the permissible inferences from that evidence in a light most favorable to the plaintiffs. *See Houston v. Safeway*, 346 Md. 503, 521, 697 A.2d 851, 860 (1997); *Impala Platinum v. Impala Sales*, 283 Md. 296, 327, 389 A.2d 887, 905 (1978). Therefore, the non-moving party can defeat a motion for summary judgment by proffering facts that would be admissible in evidence in order to generate an issue that must be resolved by the trier of fact. *See A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 261, 634 A.2d 1330, 1338 (1994); *Moura v. Randall*, 119 Md.App. 632, 640, 705 A.2d 334, 338 (1998). Appellate review of a summary judgment is limited to the issue of whether the trial court was "legally correct." *Pittman v. Atlantic Realty Co.*, 127 Md.App. 255, 269, 732 A.2d 912, 919 (1999), *rev'd on other grounds*, 359 Md. 513, 754 A.2d 1030 (2000).

other and I am, I[']m here to be persuaded so to speak but the matter whether you use the reasonable standard or the, the signature card standard, the Bank should prevail here. I mean I struggle to see how—what the Bank is supposed to do when a person comes in and I[']m accepting by the way for the sake of this discussion her assertions that she was told by the Bank officials that she could, that the money was hers. Two different officials or two different employees. One of them. [sic] And the, to me its entirely reasonable and logical if someone goes to the Bank and says I[']m a signatory on this account. May I withdrawal the money? The answer is not going to be no. The answer is going to be yes. Now the next level of scrutiny that you would put to them is that they then begin to check her benefices and say well, are you still married, you know, are you—we heard a rumor on the street that you were divorced and your husband and yourself aren[']t getting along and by the way, we[']ve never seen you here before. What are you doing here? Isn[']t there someone else who normally does the banking? Is your husband alive? I don't think Banks, I don't think case law puts that burden on the Bank.

\*    \*    \*

[Appellant's Counsel]: That[']s [sic] as far as the inquiry goes but what I would suggest is that when you have a corporate account something more is required and I think something more reasonably is required. Again, this was a matter which they saw, okay, this is Christine Honeycutt. They cut a check to Christine Honeycutt. They don[']t cut a check to Christine Honeycutt in her capacity as secretary or as treasurer but to Christine Honeycutt. She[']s not here, this is not a multiple party account. She is on this account as a corporate officer and the bottom line is that—

The Court: What is the Bank's answer to that specific point which is that they[']ve breached their standard of care by giving her a check personally when she was an officer?

[Appellee's Counsel]: I['}m [sic] not sure if the Bank would have looked at that check as a personal check. I['}m not sure if—

The Court: Because it was drawn on the corporate accounts.

[Appellee's Counsel]: Exactly. I['}m not sure if they would have said, if they would had [sic] to say Christine Honeycutt as vice president of Sheldon's Lounge.

The Court: I don't know of any case law or even bank practice that even calls for that. I understand your logic. Do you have an expert banking person who['}s going to say that that['}s the standard of care?

[Appellant's Counsel]: I, I can['}t say Your Honor that I do at this point. . . .

\* \* \*

The Court: . . . . Listen, I think rather than take up your time unnecessarily. This is a case that has to be decided on the present record and the facts of the present record do not justify holding the Bank accountable when they responded pursuant to the agreement that they had that they could withdrawal or authorize the withdrawal of money on her signature. And nothing that you['}ve said at this hearing nor anything that I['}ve read in the papers suggest that there['}s a standard of care out there that['}s going to be substantiated by an expert or anyone else to, that suggests that they have a duty that goes beyond the card and that they['}re to conduct inquiries into the private lives and business circumstances of their customers before they will honor what they['}ve already agreed to honor which is to pay out of our requests. And therefore the motion will have to be granted as to those four counts. Thank you very much.

Following the hearing, Judge Byrnes entered the following order:

Upon consideration of the foregoing Motion and Opposition to Motion for Summary Judgment and Memorandum of

Law in support thereof, it is, this 21 day of September, 2001, by the Circuit Court for Baltimore City;

**ORDERED:** That Defendant Bank's Motion for Summary Judgment be and the same is hereby Granted as to Counts 9, 10, 11 and 12.

■ Sheldon argues that the Bank breached its duty of care "by failing to make an adequate inquiry as to the authority of Christine Honeycutt to conduct banking on behalf of the business." We disagree.

■ "A bank and its customers enjoy a debtor/creditor relationship in which the rights and liabilities of each are contractual." *Gordon, Feinblatt, Rothman, Hoffberger & Hollander v. Gerhold,* 90 Md.App. 360, 376, 600 A.2d 1194 (1992); *see also Kiley v. First Nat'l Bank,* 102 Md.App. 317, 326–27, 649 A.2d 1145 (1994), *cert. denied,* 338 Md. 116, 656 A.2d 772 (1995). "Implicit in the contract [between the bank and customer] is the duty of the bank to use ordinary care in disbursing the depositor's funds." *Gillen v. Maryland Nat'l Bank,* 274 Md. 96, 101, 333 A.2d 329 (1975) (citing *Commonwealth Bank v. Goodman,* 128 Md. 452, 97 A. 1005 (1916)). In *Kiley, supra,* we stated:

A signature card may constitute a contract between a bank and its customer. *Fleming v. Bank of Va.,* 231 Va. 299, 343 S.E.2d 341, 344 (Va.1986) ("The signature card constituted the contract between the parties and, subject to the statutory schemes, regulates their rights and duties."); *Fed. Deposit Ins. Corp. v. West,* 244 Ga. 396, 260 S.E.2d 89, 91 (Ga.1979) ("The signature card and the checks drawn against the account are the contract documents between the bank and the customer."); *Chickerneo v. Soc'y Nat'l Bank of Cleveland,* 58 Ohio St.2d 315, 390 N.E.2d 1183, 1185 (Ohio 1979).

\*     \*     \*

*See* 5(a) Michie on Banks & Banking, Ch. 9, § 1, at 30 (1994 Repl.Vol.) ("A 'signature card' is a contract which creates a savings account or checking account. . . .").

*Kiley,* 102 Md.App. at 327, 649 A.2d 1145. *See also University Nat'l Bank v. Wolfe,* 279 Md. 512, 521, 369 A.2d 570 (1977).

▮▮▮ Here, Ron and Christine Honeycutt, on July 1, 1984, opened a business checking account in the name of Sheldon's Lounge with the Bank's predecessor. On that same day, Ron and Christine Honeycutt executed a signature card and checked off the box requiring only one signature to transact any business on the account. Similar to our decisions in *Kiley* and *Wolfe,* the signature card created a contractual obligation on the part of the Bank to pay the depositor's funds only as authorized by the signature card. The plain language of the signature card established that both Ron and Christine Honeycutt were authorized signatories able to transact business on Sheldon's account.[5] Moreover, the signature card expressly and unambiguously provided that the Bank is authorized to recognize and rely upon either of Ron or Christine Honeycutt's signatures on checks, drafts and orders for the payment of money, the withdrawal of funds, or the transaction of any business to Sheldon's account.

When Christine Honeycutt withdrew funds from Sheldon's account, we find, the Bank did not breach any standard of care owed to appellants. The Bank exercised reasonable care when it inspected the signature card on file for Sheldon's

---

**5.** The interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court. In determining the meaning of contractual language, Maryland courts have long adhered to the principle of the objective interpretation of contracts. Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court. If a written contract is susceptible of a clear, unambiguous and definite understanding ... its construction is for the court to determine. Further, the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean.

*Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 250–51, 768 A.2d 620 (2001) (citations and quotation marks omitted). *See also Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 731 A.2d 441 (1999). Here, we are persuaded that the language in the signature card is clear and unambiguous and thus we shall follow the plain meaning of the language in the signature card.

account and verified that Christine Honeycutt was an authorized signatory on the account. Moreover, we are persuaded that no further inquiry was required as the Bank was legally entitled to release the funds to Christine Honeycutt based upon the express authority created by the signature card.[6] Thus, because there was no genuine dispute as to any material fact, *i.e.*, that the 1984 signature card was the authoritative document on file with the Bank, we find that the lower court was correct to conclude, as a matter of law, that the signature card controlled the transaction and was ˙correct to enter summary judgment in favor of appellee.

Sheldon also argues that the Bank breached its duty of care by "failing to disburse the funds in the account in accordance with the type of account at issue and the terms of the signature card." In light of our analysis above, we find no

---

**6.** The Court of Appeals in *Taylor v. Equitable Trust Co.*, 269 Md. 149, 156, 304 A.2d 838 (1973), noted that the law relating to the presentment and payment of a depositor's checks is equally applicable to claims for wrongful disbursement of funds belonging to a depositor. In addition, the Maryland Uniform Commercial Code expressly recognizes the validity of a signature on negotiable instruments by an authorized representative, and provides that "... the representative person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract." *See* Md.Code Ann., Com. Law I § 3–402(a)(2002 Repl.Vol.).

In *Rezapolvi v. First National Bank*, 296 Md. 1, 459 A.2d 183 (1983), the Court of Appeals indirectly addressed the importance of a signature card, when it opined:

While the First National may have been entitled to decline payment of the Columbia Marketing check *because the employee's name had not yet been included on the signature card,* the signature was nevertheless authorized by the drawer[, and thus,] [t]he Columbia Marketing check, which the bank paid, did not contain an unauthorized signature....

[Emphasis added.] *Rezapolvi*, 296 Md. at 13, 459 A.2d 183. *See also Citizens Bank of Maryland v. Maryland Industrial Finishing Co.*, 338 Md. 448, 460, 659 A.2d 313 (1995) ("indorsement is either valid or invalid at the time it is made; if, at that time, the agent has authority to indorse, the indorsement is authorized. The use to which the agent later puts the check does not affect the agent's authorization to indorse it."). Here, Christine Honeycutt's name was on the signature card, and thus, the Bank's actions were commercially reasonable because her signature was expressly authorized.

merit in this argument and decline to address it.[7]

### B. Summary Judgment against the Estate.

The Estate argues that the circuit court was legally incorrect when it granted the Bank's Motion for Summary Judgment; however, the Estate failed to adequately brief this argument, and thus, we decline to address it on appeal.[8] *See* Md. Rule 8–504(a)(5)[9]; *see also Bryan v. State Roads Comm'n,* 115 Md.App. 707, 715, 694 A.2d 522 (1997) ("We need not address this argument because, by failing to present it in their initial brief, appellants' have waived the argument on appeal"); *Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994); *Federal Land Bank of Baltimore, Inc. v. Esham,* 43 Md.App. 446, 457–58, 406 A.2d 928 (1979) ("In prior cases where a party initially raised an issue but then failed to provide supporting argument, this Court has declined to consider the merits of the question so presented but not argued."). We are persuaded that the circuit court was correct.

### II. Motion for Continuance

Appellants argue that the circuit court abused its discretion by refusing to grant a continuance.[10] Specifically,

---

7. Appellants argue that, "[u]nder the terms of the signature card, Christine Honeycutt may have had the authority to transact business on behalf of Sheldon, but she was not authorized to treat the account as her personal property." In *Citizens Bank, supra,* the exact same argument was made by the employer and the Court of Appeals rejected it. *See Citizens Bank,* 338 Md. at 460, 659 A.2d 313.

8. All of the arguments in appellants' brief, regarding summary judgment, support the arguments presented by Sheldon and are silent with regard to the Estate.

9. Md. Rule 8–504, provides, in pertinent part:
   (a) Contents. A brief shall contain the items listed in the following order:
   
   \* \* \*
   
   (5) Argument in support of the party's position.

10. The abuse of discretion standard has been defined as " 'a reasonable decision based on the weighing of various alternatives.' There is an

appellants argue that there was a "reasonable possibility that another signature card does exist" and that the court abused its discretion by not allowing appellants to continue the discovery process. We disagree.

In the District Court action on October 3, 2000, Sheldon was first made aware, through discovery, that the Bank possessed only one signature card for Sheldon's account, dated July 1, 1984, at the time of the transaction.[11] In the Circuit Court action, appellants were again made aware, on May 2, 2001, through discovery, that the Bank did not have in its possession any other signature cards for Sheldon's account besides the July 1, 1984 signature card.[12] In addition, the Affidavit of Theresa A. Karamian, which was attached to the Bank's

---

abuse of discretion 'where no reasonable person would take the view adopted by the [trial] court.' " *See Fontaine v. State*, 134 Md.App. 275, 288, 759 A.2d 1136 (2000) quoting *Metheny v. State*, 359 Md. 576, 604, 755 A.2d 1088 (2000), quoting *In re Adoption/Guardianship* No. 3598, 347 Md. 295, 701 A.2d 110 (1997). "Thus, where a trial court's ruling is reasonable, even if we believe it might have gone the other way, we will not disturb it on appeal." *Fontaine*, 134 Md.App. at 288, 759 A.2d 1136.

**11.** In the District Court action, the Bank filed the following answers to Plaintiff's Interrogatories:

*Interrogatory No. 3:* Identify any document, report or memoranda (not otherwise privileged), which supports your defense in this case; and in so doing, state the substance and nature of said document, the identity of the person who authored said document, the date on which said document was produced, and the name and address of the current custodian of said document.

*Answer to Interrogatory No. 3:* Maryland National Bank signature card dated July 1, 1984 and executed by Ronnie E. Honeycutt and Christine C. Honeycutt. Defendant is the current custodian of the signature card.

**12.** The Bank filed the following responses to Plaintiff's Request for Admission of Facts and Genuineness of Documents:

*REQUEST FOR ADMISSION NO. 34:* That Nations Bank issued a signature card separate from the one issued by Maryland National Bank regarding Account No. 2008311235.

*RESPONSE TO REQUEST NO. 34:* Denied.

*REQUEST FOR ADMISSION NO. 35:* That Bank of America issued a signature card separate from the one issued by Maryland National Bank regarding Account No. 002008311235.

*RESPONSE TO REQUEST NO. 35:* Denied.

Motion for Summary Judgment against Sheldon, supports the undisputed fact that the only signature card on file with the Bank was the July 1, 1984 signature card. Thus, the only evidence of a contract between appellants and the Bank was the signature card. This signature card expressly authorized the Bank to disburse funds from the Sheldon account to either Ron or Christine Honeycutt.

In *Utica Mutual Insurance Co. v. Miller,* 130 Md.App. 373, 746 A.2d 935, *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000), appellant argued that "it should have been permitted to conduct discovery before the circuit court ruled on appellee's motion for summary judgment" and added that "discovery may have allowed it to raise issues of material fact that would defeat appellee's motion." *Id.* at 390, 746 A.2d 935. The *Utica* Court held that the circuit court "did not err in granting appellee's summary judgment motion before allowing appellant to conduct discovery pertaining to other insurance." *Id.* at 395, 746 A.2d 935. The *Utica* Court explained:

A general allegation that there is a dispute of material fact is insufficient to defeat a motion for summary judgment. *See Lowman v. Consolidated Rail Corp.,* 68 Md.App. 64, 70, 509 A.2d 1239, *cert. denied,* 307 Md. 406, 514 A.2d 24 (1986) (quoting *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 257, 272 A.2d 42 (1971)). Moreover, the mere submission of an affidavit, or other evidence in opposition to a motion for summary judgment, does not ensure that a triable issue of fact will be generated. *See Bennett v. Baskin & Sears,* 77 Md.App. 56, 71, 549 A.2d 393 (1988). Even when there are factual disputes, when "resolution of these disputes makes no difference in the determination of the legal question ... [the disputed facts] do not prevent the grant of summary judgment." *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 247, 603 A.2d 1357 (1992).

[Md.] Rule 2–501(d) addresses the use of affidavits in contesting a summary judgment motion. It provides:

If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts

essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order as justice requires.

In *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 634 A.2d 1330 (1994), the Court of Appeals addressed the requirements to justify additional discovery before a grant of summary judgment. In *Decoster*, the trial court granted a defendant's summary judgment motion on limitations grounds. The plaintiff argued that the trial court erred because if it was allowed to complete discovery, it may have been able to allege the existence of material facts that would have extended the limitations period. Conversely, the defendant argued that its affidavit supported the grant of summary judgment and mere speculation was not enough to generate an issue of material fact. *See id.* at 261, 634 A.2d 1330.

The Court of Appeals held that the trial court did not err in granting the motion for summary judgment. Writing for the Court, Chief Judge Murphy explained that "while ... [a trial] court has discretion to deny a motion for summary judgment so that a more complete factual record can be developed, it is not reversible error if the court chooses not to do so." *Id.* at 262–63, 634 A.2d 1330. Because the plaintiff below "failed to set forth facts controverting those proffered" by the defendant, the Court held that the trial court did not err in granting summary judgment. *Id.* at 263, 634 A.2d 1330.

*Utica*, 130 Md.App. at 391–92, 746 A.2d 935. *See also Chaires v. Chevy Chase Bank, F.S.B.*, 131 Md.App. 64, 88, 748 A.2d 34, *cert. denied*, 359 Md. 334, 753 A.2d 1031 (2000) ("The authority to grant a continuance is discretionary. 'The timing of a summary judgment ruling, *i.e.*, whether it is to be postponed pending completion of discovery or denied in favor of submission to the fact-finder, falls within the trial court's discretion and will be reviewed only for abuse.' "); *Markey v. Wolf*, 92 Md.App. 137, 177–178, 607 A.2d 82 (1992) ("Denial of a motion

for continuance, absent an abuse of discretion, is not a ground for reversal.").

As we stated above, we find that the circuit court was legally correct in its analysis involving the duty the Bank owed to appellants. The trial court had sufficient evidence before it to rule on the legal issues presented, and thus we are persuaded that it was not an abuse of discretion to deny a continuance pending further discovery. Appellants' factually unsupported theory that there may be another signature card is simply not enough to overcome summary judgment. *See Utica,* 130 Md.App. at 391, 746 A.2d 935. Moreover, we are persuaded that appellants were afforded adequate discovery and had ample opportunity conduct additional discovery.

**JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.**