53 A.3d 479

**Leroy POOLE**

v.

**STATE of Maryland.**

No. 2126, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Sept. 26, 2012.

---

616

Bradford C. Peabody (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: ZARNOCH, GRAEFF and JAMES P. SALMON (Retired, Specially Assigned), JJ.

GRAEFF, J.

A jury sitting in the Circuit Court for Worcester County convicted Leroy Poole, appellant, of third and fourth degree sexual offenses, second degree assault, false imprisonment, and sexual solicitation of a minor. The court imposed a sentence totaling twenty years imprisonment: ten years for the third degree sexual offense; ten years for false imprisonment, to be served consecutively; and ten years for the conviction of sexual solicitation of a minor, to be served concurrently.[1] It also ordered appellant to register as a sex offender.

Appellant presents four questions for our review, which we have reordered and rephrased slightly, as follows:

1. Was it prejudicial error to allow the detective to remain in the courtroom as the State's representative during the victim's testimony?

2. Was the evidence sufficient to support appellant's conviction of third degree sexual offense?

3. Was the evidence sufficient to support appellant's conviction of sexual solicitation of a minor?

4. Does sexual solicitation of a minor to engage in a third degree sexual offense merge into the third degree sexual offense?

For the reasons set forth below, we agree that the evidence was insufficient to support the conviction for sexual solicitation of a minor, and therefore, we shall reverse that conviction, but otherwise, we shall affirm the judgments of the circuit court.

---

**1.** The court merged, for sentencing purposes, the convictions for assault and fourth degree sexual offense into the third degree sexual offense conviction. It discussed whether the conviction for sexual solicitation merged with third degree sexual offense, but ultimately it agreed with the prosecutor's argument that "the act of actually committing the offense would be separate" because "solicitation doesn't require ... the offense to have actually been committed, just soliciting."

## FACTUAL AND PROCEDURAL BACKGROUND

The victim, K.G.,[2] testified that, on June 27, 2009, she was visiting Ocean City from Kansas with her 4–H group. She was 15 years old at the time. At approximately 10:00 or 11:00 a.m., she was at a lemonade stand on the boardwalk. Appellant approached her, introduced himself as "Leroy," and asked for her name. She gave him her name, and he gave her his business card, which indicated that he was a personal trainer. Finding the incident "ridiculous," Ms. G. laughed about the encounter and returned to the beach with her friends.

After a few hours, Ms. G. returned to the lemonade stand. A posted sign indicated that the stand was temporarily closed, but the stand worker would return in five minutes. Ms. G. decided to go into the store next door to pass the time. When she entered the store, "the guy behind the counter asked me if I was looking for Leroy, and I said no." The man then put his arm around her and tried leading her to the back of the store. Ms. G. said: "[N]o, I'm just going to look at these belts," and the man said "okay" and returned behind the counter. She had never seen the man behind the counter before.

Appellant then walked in and told Ms. G. that he had wanted to show her something earlier. She testified that appellant then "led me to the back with his arm behind me, guiding me to the back, and I just kind of went with it, because I didn't know what to do." She had no idea where he was taking her or what was happening, and appellant "was behind me and he was just kind of pushing me there, but not being really forceful but still leading me there." He did not say anything. He took her to a closet, shutting the door behind him and locking it. He then "pushed me into the bathroom with him," and shut that door and locked it. The bathroom was an interior room within the closet. She described the bathroom as "[r]eally, really small," "very crowded

---

2. Pursuant to the State's request to protect the identity of the victim, who was a juvenile on the date of the incident, we will identify her using only her initials. *See S.B. v. Anne Arundel County Dep't of Soc. Servs.*, 195 Md.App. 287, 290 n. 1, 6 A.3d 329 (2010).

and really grossly dirty." There was no one else around. Appellant's body blocked the door to the bathroom, which was the only exit.

Once they were inside the bathroom:

He had me up against the wall, and it was really small so I couldn't move around him, and he is huge compared to me. So I couldn't move around him. And he just told me that I was really beautiful. And he would try lifting up my dress that I had over my swim suit, and I told him no, and I did tell him that I was 15, because I didn't know how old he was. And I just said, I could get you in a lot of trouble for what you are doing. And he kept trying to kiss me. And he like touched my hair a lot. And he wound up lifting my dress up and putting his hand in my pants and . . . fingering my vagina.

During the encounter, appellant continued telling Ms. G. that she was beautiful, and "he was apologizing, . . . saying I'm sorry, you're just so beautiful." She asked him his age "because I could see white stubble," and he had told her earlier that he was in his late twenties. Appellant then pushed her down to the toilet seat, unbuttoned his pants, and started fondling himself with his hand on the outside of his underwear. She described how the encounter ended:

He was fondling himself, and I . . . kept asking him to stop, and he wouldn't, and he would just apologize. And I told him if you are so sorry you are not showing it, and he finally apologized, and . . . re-did his pants, and tried kissing me again, and he pushed his face up against mine and looked in the mirror and said we look beautiful together. And then he opened the door and he led me out.

The entire incident lasted approximately ten minutes. She testified that she was "[t]errified. Like, I couldn't handle the situation. I didn't know what was going to come of it."

She "felt that if [she] screamed or something it would make him angry, which could have made things worse." Appellant tried talking to her and "getting my phone number, and he got my phone number by going through my phone."

Appellant said that he hoped to see her again. He later sent her a text message, stating "good afternoon," but she did not reply. The text message was the last contact that she had with him.

Detective Nicholas Simpson, a member of the Ocean City Police Department, testified that he initiated an investigation of the incident after a sexual assault complaint had been brought to his attention by the police department in Ms. G's home state. He obtained appellant's business card and then attempted to contact appellant, who declined to be interviewed. After conducting several interviews and running appellant's name through a police database, Detective Simpson was able to identify appellant.

The State rested. Counsel for appellant moved for a judgment of acquittal as to all counts, which the court denied.

Appellant then took the stand, testifying that he had no recollection of anything that happened on the day that Ms. G. said she met him. He did not recall meeting Ms. G. During cross-examination, he stated that he would be "46 in a couple of weeks," and he was 6'5" tall, weighing 260 pounds.

Defense counsel then renewed the motion for judgment of acquittal, arguing specifically that the evidence was insufficient to support a conviction for third degree sexual offence and sexual solicitation of a minor. The court denied the motion.

As indicated, the jury convicted appellant of third degree sexual offense, fourth degree sexual offense, false imprisonment, second degree assault, and sexual solicitation of a minor. Appellant filed a timely notice of appeal.

## DISCUSSION

### I.

#### Sequestration

Before trial began, defense counsel asked the court to sequester the two witnesses who would be testifying for the

State, the victim and Detective Simpson. The prosecutor responded: "[T]he State would ask that Detective Simpson remain in the courtroom as the State's representative. And I believe [Ms. G.] has a right to remain in the courtroom as a victim in the crime." The court denied the motion, and the trial proceeded.

During Detective Simpson's testimony, the State asked what information Detective Simpson gathered about Mr. Poole during his investigation, and the following occurred:

DETECTIVE SIMPSON: I was able to learn, after speaking with [Ms. G.] on the telephone and conducting a telephone interview of the story that she's basically explained to the jury this morning, she was on the boardwalk with a 4–H trip. It was her first time ever to Ocean City—

DEFENSE COUNSEL: We would object to this. This would be hearsay.

THE COURT: Sustained.

Appellant argues that the court erred in denying his motion to sequester Detective Simpson. He contends that a detective who is a State's witness should be subject to sequestration "to discourage fabrication, inaccuracy and collusion." Appellant asserts that "the prejudice caused by the error is clear," arguing that the detective "improperly bolstered" Ms. G's credibility with the jury by testifying that, "after speaking with [Ms. G.] on the telephone and conducting a telephone interview," he was able to learn "the story that she's basically explained to the jury this morning."

The State contends that the trial court properly permitted Detective Simpson to remain in the courtroom as the State's representative. It points to Maryland Rule 5–615(b)(2), which excludes from the sequestration requirement "an officer or employee of a party that is not a natural person designated as its representative by its attorney," arguing that this rule encompasses "investigative agents of the government in criminal cases," including Detective Simpson. The State further argues that, even if the court did err, "any error is harmless," noting that Detective Simpson made only one reference to

what K.G. told him, and appellant's objection on hearsay grounds was sustained.

We agree with the State that there was no error. As explained below, the court properly denied the motion to sequester Detective Simpson pursuant to Rule 5–615(b)(2).

Maryland Rule 5–615(a) provides, in part, as follows: "Except as provided in sections (b) and (c) of this Rule, upon the request of a party made before testimony begins, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." The Court of Appeals has explained the purpose of this sequestration rule:

> The general purpose of the sequestration of witnesses "has been to prevent ... [witnesses] from being taught or prompted by each other's testimony." Additionally, the object of Maryland Rule 5–615 "is to prevent one prospective witness from being taught by hearing another's testimony; its application avoids an artificial harmony of all the testimony; it may also avoid the outright manufacture of testimony."

*Tharp v. State*, 362 Md. 77, 95, 763 A.2d 151 (2000) (citations omitted). *Accord Johnson v. State*, 283 Md. 196, 200, 388 A.2d 926 (1978) (noting that the purpose of the sequestration rule in effect at the time was " 'to prevent a prospective witness from being taught or prompted by the testimony of another' ") (quoting *Brown v. State*, 272 Md. 450, 477, 325 A.2d 557 (1974)). Pursuant to Rule 5–615(a), when a party requests sequestration prior to the beginning of testimony, the court is required to grant the motion to sequester witnesses, subject to certain exceptions. *Tharp*, 362 Md. at 97, 763 A.2d 151.

Rule 5–615(b) & (c) set forth the exceptions to the rule of mandatory exclusion as follows:

> (b) **Witnesses not to be excluded.** A court shall not exclude pursuant to this Rule
>
> (1) a party who is a natural person,
>
> (2) *an officer or employee of a party that is not a natural person designated as its representative by its attorney,*

(3) an expert who is to render an opinion based on testimony given at the trial,

(4) a person whose presence is shown by a party to be essential to the presentation of the party's cause, such as an expert necessary to advise and assist counsel, or

(5) a victim of a crime or a delinquent act, including any representative of such a deceased or disabled victim to the extent required by statute.

(c) **Permissive non-exclusion.** The court may permit a child witness's parents or another person having a supportive relationship with the child to remain in court during the child's testimony.

(Emphasis added).

██ Here, we address whether the State, which is not a natural person, may designate a law enforcement officer as its representative pursuant to Maryland Rule 5–615(b)(2), thereby excluding that officer from the otherwise mandatory sequestration rule. This question involves an issue of law, which we review *de novo*. *See Pinkney v. State*, 427 Md. 77, 88, 46 A.3d 413 (2012) ("Our interpretation of the Maryland Rules is a question of law; as such, we review a trial court's determinations on matters of interpretation without deference.").

The Court of Appeals recently reiterated the principles we use when construing the Maryland Rules:

When we interpret the Rules of Procedure, we use the same canons and principles we use to construe statutes. *State v. Williams*, 392 Md. 194, 206, 896 A.2d 973, 980 (2006); *Brown v. Gress*, 378 Md. 667, 676, 838 A.2d 362, 367 (2003). In *Brown*, Chief Judge Bell, writing for the Court, summarized the principles we apply as follows:

In our effort to discern the meaning of a rule, we look first to the words of the rule. When the words are clear and unambiguous, ordinarily we need not go any further. Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent. We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a

meaning not otherwise evident by the words actually used. Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense.

*Id.* (quoting *Knox v. State,* 404 Md. 76, 85–86, 945 A.2d 638 (2008)).

Although we ordinarily end our inquiry with the text, "[w]e are not . . . precluded from looking at the purpose of the" rule or "other material that fairly bears on the fundamental issue of legislative goal or purpose." *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731 (1993) (citations and quotations omitted). This is because "we do not read the language in a vacuum." *Cain v. State,* 386 Md. 320, 327, 872 A.2d 681 (2005). Instead, we construe the rule "within the context of the . . . scheme, considering the 'purpose, aim, or policy of the enacting body.'" *Id.* (citation omitted). *Accord In re Damien F.,* 182 Md.App. 546, 566, 958 A.2d 402 (2008).

As indicated, Maryland Rule 5–615(b) states that "[a] court shall not exclude pursuant to this Rule . . . (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney." There is no dispute that the State of Maryland qualifies as "a party that is not a natural person." *See* BLACK'S LAW DICTIONARY 1257 (9th ed.2009) (defining "person" as "[a] human being," "[a]lso termed *natural person* "). And the legislative history of the Rule makes clear that a law enforcement officer, such as Detective Simpson, falls within the exception for an "officer or employee of the State."

Prior to the adoption of Maryland Rule 5–615 in 1993, the sequestration rule included an exception only for an expert witness, and there was no exception for a police officer. *Johnson,* 283 Md. at 197, 388 A.2d 926 ("sequestration of witnesses is mandatory and [ ] there is no exception in it for a principal investigator").[3] As this Court explained:

---

**3.** The Maryland Rule in effect at that time, Rule 753, stated, in pertinent part: "The court . . . shall, upon the request of a party, order that

[I]n Maryland no exemption from the operation of the rule on witnesses exists for a witness who is a detective or police officer assisting in the preparation or presentation of the State's case. If the State elects to have the detective or officer remain in the courtroom despite a rule on witnesses, then he may not testify in its case in chief.

*Nickerson v. State,* 22 Md.App. 660, 668, 325 A.2d 149, *cert. denied,* 273 Md. 722 (1974). The Court of Appeals noted that the Maryland rule was "in sharp contrast" to Rule 615 of the Federal Rules of Evidence, which had been construed to permit investigative agents to sit at counsel table throughout the trial, even if the agent was a witness. *Johnson,* 283 Md. at 199 n. 2, 388 A.2d 926.

In adopting Rule 5–615, years later, the Court of Appeals used language very similar to that used in Federal Rule 615. *Compare* FED.R.EVID. 615 (mandatory sequestration rule does not authorize excluding "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"), *with* Md. Rule 5–615(b)(2) (court "shall not exclude" an "officer or employee of a party that is not a natural person designated as its representative by its attorney.").[4] The source note for Maryland Rule 5–615 indicates that the rule "is derived from Federal Rule of Evidence 615." Thus, in determining the meaning of the Maryland Rule, the interpretation of the federal rule is in-

---

the witnesses be excluded from the courtroom until called upon to testify," with the only exception being for an expert witness "who is to render an opinion based on the testimony given at the trial." *Johnson v. State,* 283 Md. 196, 197, 388 A.2d 926 (1978).

**4.** The full text of Rule 615 of the Federal Rules of Evidence provides as follows:

At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:

(a) a party who is a natural person;

(b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney;

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or

(d) a person authorized by statute to be present.

structive. *See Perry v. Maryland,* 381 Md. 138, 145, 848 A.2d 631 (2004) (Where a Maryland rule of evidence is derived from a federal rule "judicial interpretations of the federal rule are persuasive.").

The legislative history of the federal rule makes clear the intent that an investigating officer is not subject to mandatory sequestration. The Advisory Committee Note to Federal Rule 615 sets forth the Notes of the Committee on the Judiciary, which explicitly addressed the issue whether law enforcement officers fall within the "officer or employee" exception:

> Many district courts permit government counsel to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness. The practice is permitted as an exception to the rule of exclusion and compares with the situation defense counsel finds himself in—he always has the client with him to consult during the trial. The investigative agent's presence may be extremely important to government counsel, especially when the case is complex or involves some specialized subject matter. The agent, too, having lived with the case for a long time, may be able to assist in meeting trial surprises where the best-prepared counsel would otherwise have difficulty. Yet, it would not seem the Government could often meet the burden under rule 615 of showing that the agent's presence is essential. Furthermore, it could be dangerous to use the agent as a witness as early in the case as possible, so that he might then help counsel as a nonwitness, since the agent's testimony could be needed in rebuttal. Using another, nonwitness agent from the same investigative agency would not generally meet government counsel's needs.

> This problem is solved if it is clear that investigative agents are within the group specified under the second exception made in the rule, for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." It is our understanding

that this was the intention of the House committee. It is certainly this committee's construction of the rule.

Fᴇᴅ.R.Eᴠɪᴅ. 615 (quoting S.Rᴇᴘ. No. 93–1277).

Based on the legislative history of Federal Rule 615, federal courts have held that the "officer or employee" exception includes a law enforcement officer, and therefore, the trial court "has a right to make an exception from a general rule of sequestration in favor of the chief investigating agent of the government involved in a trial." *United States v. Parodi,* 703 F.2d 768, 773 (4th Cir.1983). *Accord United States v. Riddle,* 193 F.3d 995, 997 (8th Cir.1999) ("The exception has been interpreted to allow government case agents to sit at counsel table throughout the trial."); *United States v. Crabtree,* 979 F.2d 1261, 1270 (7th Cir.1992) ("The agent could reasonably fit within the exemption provision of Rule 615, which does not authorize exclusion of an officer of the federal government designated as a representative of the government at trial."), *cert. denied,* 510 U.S. 878, 114 S.Ct. 216, 217, 126 L.Ed.2d 173 (1993); *United States v. Rivera,* 971 F.2d 876, 889 (2d Cir. 1992) ("It is within a trial court's discretion to exempt the government's chief investigative agent from sequestration ... and it is well settled that such an exemption is proper under Rule 615(2), deeming the agent-witness a 'representative' of the government."); *United States v. Martin,* 920 F.2d 393, 397 (6th Cir.1990) ("The trial court acted consistent with the mandate of Fed.R.Evid. 615 in refusing to order the sequestration of the case agent."); *United States v. Gonzalez,* 918 F.2d 1129, 1137 (3d Cir.1990) ("The Federal Rules of Evidence permit the employee of a party that is not a natural person to act as its designated representative at trial.... Here, the case agent functioned as the government's designated representative."), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991); *United States v. Robles–Pantoja,* 887 F.2d 1250, 1256–57 (5th Cir.1989) ("Rule 615 of the Federal Rules of Evidence allows the investigative officer in a case to be the government's designated representative to assist the prosecutor at trial, notwithstanding that this officer will also testify at trial as a government witness."); *United States v. Machor,* 879

F.2d 945, 953 (1st Cir.1989) ("It seems clear that a case agent representing the government is within this exception."), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1070 (1990); *Queen v. Washington Metropolitan Area Transit Authority,* 842 F.2d 476, 481–82 (D.C.Cir.1988) ("the advisory committee notes accompanying" the rule "cite with approval the practice of allowing government counsel to have investigative agents, who also will serve as witnesses, at counsel table at trial"); *United States v. Thomas,* 835 F.2d 219, 223 (9th Cir.1987) ("Under the law of this circuit, Agent Smith was properly excluded from this rule as an officer for the government."), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Butera,* 677 F.2d 1376, 1381 (11th Cir.1982) (The agent "was clearly exempted under Rule 615(2)"), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983).

In addition to finding the interpretation of Federal Rule 615 instructive, the procedural history leading to the adoption of Rule 5–615 confirms the intent that Maryland Rule 5–615(b)(2) encompass a law enforcement officer designated as the State's representative. In 1993, the Standing Committee on Rules of Practice and Procedure (the "Rules Committee"), in its One Hundred Twenty–Fifth Report to the Court of Appeals, submitted proposed Rule 5–615, which included in subsection (b) the "officer or employee" exception, with the following language: "A court shall not exclude pursuant to this Rule … (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, *except that in a criminal case the State may not be so represented.*" 20 Md. Reg. 15 (July 23, 1993) (emphasis added). This language was consistent with the Court of Appeals' decision that "sequestration of witnesses is mandatory and [ ] there is no exception in it for a principal investigator." *Johnson,* 283 Md. at 197, 388 A.2d 926.

The Court of Appeals, however, deleted the "except" clause, leaving the current form of the Rule: "A court shall not exclude pursuant to this Rule … (2) an officer or employee of a party that is not a natural person designated as its represen-

tative by its attorney." 21 Md. Reg. 1 (Jan. 7, 1994). This change occurred after the Court of Appeals held several hearings on the Rules Committee's Report on the proposed Rules of Evidence, during which arguments were made that Maryland should adopt the federal practice of permitting the chief investigator to remain at the prosecutor's table during trial to aid with criminal prosecutions. Tape of Court of Appeals Hearing (October 4, 1993). In deleting the "except" clause, which precluded the ability of the State in a criminal case to be represented by an officer or employee, the Court clearly intended to adopt the federal approach to sequestration.

Notable Maryland treatise authors similarly have construed the scope of Rule 5–615(b)(2). *See* Lynn McLain, Maryland Rules of Evidence 146 (3d ed.2007) ("The Rule departs from former Rule 4–321 and the Maryland case law, *Johnson v. State*, 283 Md. 196, 388 A.2d 926 . . . and follows the federal rule. . . . Thus, the State may so designate a representative to remain in the courtroom."); Joseph F. Murphy, Jr., Maryland Evidence Handbook 99 (4th ed.2010) (Maryland Rule 5–615(b)(2) "creates a 'case agent' exception for criminal cases. Prosecutors are now entitled to have an 'advisory witness' at the trial table.").

■ Accordingly, we disagree with appellant's assertion that "[a] detective who is a State's witness is not immune to sequestration as the States's representative." We hold that a law enforcement officer involved in a criminal prosecution falls within the "officer or employee" exception to the mandatory sequestration requirement of Rule 5–615(a), and pursuant to Rule 5–615(b), the officer may remain in the courtroom if designated as the State's representative. The circuit court did not err in denying defense counsel's motion to sequester Detective Simpson.

## II.

Appellant next contends that the evidence was insufficient to support his conviction for third degree sexual offense. The

third degree sexual offense statute states, in pertinent part, as follows:

### § 3–307. Sexual offense in the third degree.

(a) *Prohibited.*—A person may not:

(1)(i) engage in sexual contact with another without the consent of the other; and

(ii) 1. employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;

2. suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;

3. threaten, or place the victim in fear, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or

\* \* \*

(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old. . . .

Md.Code (2009 Supp.) § 3–307(a) of the Criminal Law Article ("C.L.").[5]

Appellant's contention that the evidence was insufficient to support his conviction for third degree sexual offense focuses primarily on § 3–307(a), the portion of the statute prohibiting sexual contact without consent. He argues that, although the acts described constituted "sexual contact,"[6] there was insufficient evidence that any of the aggravating factors set forth in § 3–307(a)(1) were present. Appellant disagrees with the

---

5. In this opinion, we will cite the language of the statutes in effect on June 27, 2009, the date of the offense. With one exception, noted *infra*, there are no changes to the statutes that are significant to this appeal.

6. "Sexual contact" is defined as "an act . . . in which a part of an individual's body . . . penetrates, however slightly, into another individual's genital opening. . . ." Md.Code (2009 Supp.) § 3–301(f) of the Criminal Law Article ("C.L.").

State's argument that he placed Ms. G. in fear of "serious physical injury." He asserts that, although Ms. G. testified that she "feared that [a]ppellant would overpower her and continue fondling her, or commit some sexual act," this "is not the legal equivalent of the 'fear' of 'serious physical injury.' "

As indicated, appellant's seven page sufficiency argument is based almost entirely on § 3–307(a)(1), addressing sexual contact without consent. In one footnote, however, appellant argues that his actions did not violate § 3–307(a)(4), involving a sexual act with a victim who is 14 or 15 years old, asserting that his actions did not constitute a "sexual act," as defined by the statute.

The State contends that appellant's argument "all but ignores § 3–307(4), which classifies as a third-degree sexual offense any person over the age of 21 engaging in a sexual act with a victim who is 14 or 15 years old." With respect to the one sentence footnote, which states that there was insufficient evidence to show a violation of this statutory provision, the State argues that we should not address this issue. It notes that appellant "cites no authority and makes no argument in support of [his] bald conclusion," and it contends that, because the issue was not raised below, it is not preserved for appellate review. In any event, the State argues, there was sufficient evidence to prove both prongs of third degree sexual offense: (1) that appellant engaged in sexual contact while placing Ms. G. in fear of imminent serious physical injury; and (2) that he was over the age 21 and engaged in a sexual act with a 15–year–old girl.[7]

A person is guilty of a sexual offense in the third degree if he "engages in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old." Here, Ms. G. testified that, on the day of the incident, she was 15 years old, and appellant told her that he was "in his late twenties." She testified that, during the

---

7. The court instructed the jury on both theories of third degree sexual offense.

sexual assault, appellant inserted his fingers into her vagina. Appellant testified in his own defense that he was 45 years old on the day of trial, making him 44 years old on the date of the incident.

Appellant does not dispute that the age requirements for a sexual offense in the third degree were satisfied, but he argues that he did not engage in a sexual act with Ms. G. A "sexual act" is defined, in part, as "an act in which an object penetrates, however slightly, into another individual's genital opening . . . ." and "can reasonably be construed to be for sexual arousal and gratification." C.L. § 3–301(e).[8] Appellant states, in a single sentence in a footnote, that "this is not a case in which 'an *object* . . . penetrates . . . into another individual's genital opening.' " This argument was not raised below, and it is not supported by any legal authority. Accordingly, we shall not address it.

▋ "It is well settled that appellate review of the sufficiency of the evidence in a criminal case tried by a jury is predicated on the refusal of the trial court to grant a motion for judgment of acquittal." *State v. Rich*, 415 Md. 567, 574, 3 A.3d 1210 (2010) (quoting *Starr v. State*, 405 Md. 293, 302, 951 A.2d 87 (2008)). Maryland Rule 4–324 requires a defendant to "state with particularity all the reasons why the motion [for judgment of acquittal] should be granted." Md. Rule 4–324(a). "This means that a defendant must 'argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient.' " *Arthur v. State*, 420 Md. 512, 522, 24 A.3d 667 (2011) (quoting *Starr*, 405 Md. at 303, 951 A.2d 87). "The issue of sufficiency of evidence is not preserved when appellant's motion for judgment of acquittal is on a ground different

---

**8.** This was the statute in effect at the time of the crime. Effective October 1, 2011, the General Assembly changed the definition of "sexual act" to include "an act 'in which an object **or a part of an individual's body** penetrates, however slightly, into another individual's genital opening. . . . (Emphasis added). Neither party has discussed any legislative history regarding this change that may shed light on the argument presented in this appeal.

than that set forth on appeal." *Anthony v. State,* 117 Md.App. 119, 126, 699 A.2d 505, *cert. denied,* 348 Md. 205, 703 A.2d 147 (1997).

■ Here, appellant moved for judgment of acquittal at the close of the State's case. Appellant argued: (1) that the State had not proved any of the aggravating factors in § 3–307(a)(1); and (2) there was no evidence proving appellant's age, an element of § 3–307(a)(4). Appellant did not argue, as he does on appeal, that the State did not prove that he committed a "sexual act," as statutorily defined. At the close of all the evidence, after appellant testified regarding his age, defense counsel renewed his motion for judgment of acquittal, stating that he was raising "the same argument." Thus, the argument that appellant makes on appeal, that there was insufficient evidence to show that his actions constituted a "sexual act," is unpreserved for this Court's review.

■ Moreover, as noted, appellant's argument in this regard is made in one sentence, in a footnote, with no supporting argument. For this reason as well, we will not consider this contention. *See Assateague Coastkeeper v. Md. Dep't of the Env't,* 200 Md.App. 665, 670 n. 4, 28 A.3d 178 (2011) ("Appellants failed, however, to present any argument on this issue. Therefore, we will not address it."), *cert. denied,* 424 Md. 291, 35 A.3d 488 (2012); *Honeycutt v. Honeycutt,* 150 Md.App. 604, 618, 822 A.2d 551 (refusing to address argument because appellants failed to adequately brief the argument), *cert. denied,* 376 Md. 544, 831 A.2d 4 (2003). *Accord* Md. Rule 8–504(a)(5) (brief shall contain "[a]rgument in support of the party's position").

## III.

Appellant's next contention involves his conviction for sexual solicitation of a minor. Section 3–324 of the Criminal Law Article provides, in pertinent part, as follows:

A person may not, with the intent to commit a violation of § 3–304, § 3–306, or § 3–307 of this subtitle or § 11–304, § 11–305, or § 11–306 of this article, knowingly solicit a

minor, or a law enforcement officer posing as a minor, to engage in activities that would be unlawful for the person to engage in under § 3–304, § 3–306, or § 3–307 of this subtitle or § 11–304, § 11–305, or § 11–306 of this article.

C.L. § 3–324(b). The statute defines "solicit" as "to command, authorize, urge, entice, request, or advise a person by any means. . . ." C.L. § 3–324(a).

 Appellant argues that the evidence was insufficient to convict him of this offense. Specifically, he argues that he did not solicit Ms. G. to engage in a third degree sexual offense, but rather, according to Ms. G's testimony, "he simply did the acts he wanted to do." [9]

The State contends that the evidence was sufficient to support the conviction of sexual solicitation of a minor. It asserts that the evidence supported a finding that appellant solicited Ms. G. "by initiating contact with her, leading her into a small back room under false pretenses, and attempting to gain her agreement to engage in sexual contact with her by complimenting her appearance." It further asserts that, when Ms. G. refused, appellant "used force to sexually assault her," and after that, he "continued to try and entice [Ms. G.] into a future encounter by obtaining her telephone number, telling her that he hoped to see her again, and contacting her later that day via text message."

We review a challenge to the sufficiency of the evidence by determining "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Accord Bible v. State,* 411 Md. 138, 156, 982 A.2d 348 (2009); *Reeves v. State,* 192

---

9. Appellant further asserts that, "inasmuch as the evidence was insufficient to sustain the conviction of third degree sexual offense," "the evidence was insufficient to sustain his conviction of soliciting the complainant to commit that offense." In light of our determination that the evidence was sufficient to support the conviction for third degree sexual offense, this contention need not be addressed.

Md.App. 277, 302, 994 A.2d 469 (2010). "If the evidence 'either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt[,]' then we will affirm the conviction." *Bible,* 411 Md. at 156, 982 A.2d 348 (quoting *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998)).

Even with this deferential standard of review, we agree with appellant that there was insufficient evidence that appellant solicited Ms. G. Prior to the assault in the locked room, appellant's contact with Ms. G. consisted of telling her that he wanted to show her something, putting his arm behind her back, and guiding her to the room he locked. He then told her that she was beautiful, and he touched her hair. Appellant did not "command, authorize, urge, entice, request, or advise" Ms. G. to engage in any sexual activity with him. Instead, he just acted, cornering Ms. G. and inserting his fingers in her vagina.

After the incident, appellant obtained her phone number and told her that he hoped to see her again. He later sent her a text message, which said "good afternoon." She did not reply to it. Nothing in this conduct qualifies as solicitation to engage in sexual activity. Accordingly, we hold that the evidence was insufficient to support the conviction for sexual solicitation of a minor.[10]

**JUDGMENTS OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED, IN PART, AND REVERSED, IN PART. CONVICTION FOR SEXUAL SOLICITATION OF A MINOR REVERSED. COSTS TO BE**

---

10. Appellant's last contention is that, pursuant to the rule of lenity and principles of fundamental fairness, "[s]exual solicitation of a minor to engage in a third degree sexual offense merges into the third degree sexual offense." Because we are reversing the conviction for sexual solicitation of a minor, we need not address this contention. We do note, however, that the solicitation of a minor to engage in sexual activity is conduct separate from that involved in the sexual activity itself. *See* Am.Jur.2d *Criminal Law* § 158 ("[T]he policy behind the prohibition of solicitation is to protect people from exposure to inducements to commit or join in the commission of a crime.").

**636**

PAID 75% BY APPELLANT, 25% BY WORCESTER COUNTY.